180 N.J. Super. 482 (1981)
435 A.2d 845
MICHAEL KOZUB, PLAINTIFF-APPELLANT,
v.
JON OPT'HOF, BUILDING INSPECTOR OF VERNON TOWNSHIP, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1981.
Decided August 14, 1981.
*483 Before Judges Botter, King and McElroy.
Richard E. Honig argued the cause for appellant (Clark, Leonard & Honig, attorneys; Richard E. Honig on the brief).
Paul F. Koch argued the cause for respondent.
The opinion of the court was delivered by BOTTER, P.J.A.D.
We granted leave to appeal from an order denying plaintiff's motion for summary judgment. Plaintiff sought judgment declaring that, by failing to adopt a resolution containing findings of fact and conclusions within the time limits provided by N.J.S.A. 40:55D-10(g) and N.J.S.A. 40:55D-73, plaintiff's application for a use variance must be deemed to have been granted by the board of adjustment, despite its unanimous vote denying the application.
For the purposes of this appeal we can abbreviate the factual and procedural history. Plaintiff filed an application with the Vernon Township Zoning Board of Adjustment (board) for a variance from requirements of the zoning ordinance and for site-plan approval to permit the alteration and use of an existing building as a repair shop specializing in front end alignment of motor vehicles. The existing "block" building had been vacant for some eight to ten years. It is located on a lot having frontage of 100 feet and a total area of 25,097 square feet. The building has an area of 2,097 square feet. The property is located in the A-4 zone which permits, among other uses, the retail sale of mercantile goods, provided the area of each building *484 does not exceed 2,000 square feet. The neighboring properties are largely residential in character and some are wooded. The zone also contains a contractor's business, a restaurant, a fire house, and a gas station.
Plaintiff asserts that he applied for a use variance as well as front yard and side yard variances. The record before us does not contain the application, but it is not needed for the issues on this appeal. The board interpreted the application as one seeking a use variance. After a full hearing on January 2, 1980, the board voted to deny the application. The vote was unanimous. No formal resolution was adopted at that time containing findings of fact or conclusions. However, the minutes of the meeting are extensive and contain much discussion for and against the proposal. Objectors appeared in person and some submitted written statements which were read into the record. Before the vote one board member stated that "the proposal is excellent, however, it is a use variance, the neighborhood people are objecting to it," and therefore he would move to deny the application. The motion carried and ended the matter for the time being. Notice of the denial was published on January 17, 1980 in a local newspaper.
In early March 1980, plaintiff's attorneys asked the board's attorney for a copy of any resolution adopted by the board. A new attorney had been appointed after the January 2, 1980 meeting and he said he knew nothing of the matter. Further inquiries were made and eventually, in late July, plaintiff's attorneys received a copy of a resolution adopted by the board on June 4, 1980. (There is some question raised as to the date of the resolution, but whether it was adopted on May 7 or June 4 would not change the result in this case.) Promptly thereafter plaintiff demanded that defendant, the township building inspector, issue a construction permit on the ground that the board's failure to adopt a resolution within the statutory time limits constituted approval of the application. Defendant's refusal to comply prompted the institution of this action to compel the issuance of a permit.
*485 Plaintiff moved for summary judgment. The Township of Vernon moved to intervene, and defendant moved to compel plaintiff to join the board of adjustment as a necessary party. In court, William Postman, a nearby resident who had vigorously opposed the application, also sought to intervene. Counsel for defendant suggested that plaintiff had a remedy for the variance denial that he had not pursued, namely, an appeal to the township committee. Noting that the time limits and remedy for inaction provided in N.J.S.A. 40:55D-10(g) and N.J.S.A. 40:55D-73 were designed to prevent "dallying" by boards of adjustment, the trial judge held, nevertheless, that plaintiff should have pursued his appeal to the township committee. In the circumstances, plaintiff was given the right to perfect such an appeal within ten days of the entry of the court's order. That time was further stayed by consent pending the outcome of the appeal to this court. The motions to intervene were declared moot by virtue of that disposition.
N.J.S.A. 40:55D-73 provides:
a. The board of adjustment shall render a decision not later than 120 days after the date (1) an appeal is taken from the decision of an administrative officer or (2) the submission of a complete application for development to the board of adjustment pursuant to section 59b. [N.J.S.A. 40:55D-72] of this act.
b. Failure of the board to render a decision within such 120-day period or within such further time as may be consented to by the applicant, shall constitute a decision favorable to the applicant.
Prior to its amendment by L. 1979, c. 216, § 7, N.J.S.A. 40:55D-10(g) provided as follows:
Each decision on any application for development shall be in writing and shall include findings of facts and conclusions based thereon.[1]
*486 In Gridco, Inc. v. Hillside Tp. Zoning Board, 167 N.J. Super. 348 (Law Div. 1979), Judge Feller held that the failure of a board of adjustment to render its decision in the form of a written resolution within the 120-day period provided by N.J.S.A. 40:55D-73 constituted approval of an application for a variance. He reasoned that N.J.S.A. 40:55D-10(g) requires decisions on any application for development to be in writing containing findings of fact and conclusions, that such a decision must be made within 120 days after a complete application has been submitted, and that the zoning ordinance in the case required decisions to be in the form of a resolution of the board. He found the statutory requirements to be mandatory because "shall" is defined in N.J.S.A. 40:55D-3 as mandatory. Thus, he *487 concluded, the failure of a board of adjustment to meet these requirements constituted approval of the application by the terms of N.J.S.A. 40:55D-73(b), notwithstanding that the board did not approve the application by the requisite number of board members as required by N.J.S.A. 40:55D-70(d) in the case of a use variance. By contrast, Judge Havey held in Aurentz v. Little Egg Harbor Tp. Planning Bd., 171 N.J. Super. 135 (Law Div. 1979), that action by resolution containing findings of a planning board satisfied the time limits to prevent approval even though, lacking a quorum, the resolution was void. He therefore remanded the matter for reconsideration by the board with a proper quorum.
We cannot fault Judge Feller's reasoning in Gridco, Inc., supra. Nevertheless, serious problems are created by any rule that would transform the denial of a development application publicly made and published into approval by the failure of a board to adopt a resolution giving reasons for the denial. In this case a number of objectors had reason to believe Kozub's application was denied. They were put at ease by that decision. Unbeknownst to them, the decision would somehow be reversed without further action by the board or any other agency to whom an appeal might have been taken because of the board's neglect to adopt a proper formalizing resolution. It may very well be that the application could not lawfully have been granted by the Board by affirmative action. For example, a hardship variance could not be granted without proof of hardship within the meaning of the law, nor could a use variance be granted without proof of special reasons to justify the dissonant use in the zone. N.J.S.A. 40:55D-70(c) and (d). Yet the result sought by appellant in this case is a declaration that the failure to adopt a resolution as required by N.J.S.A. 40:55D-10(g) constitutes the failure of the board to render "a decision" within the 120-day period required by N.J.S.A. 40:55D-73(b). Thus, prior to the amendment of N.J.S.A. 40:55D-10(g), we would be inclined to view the public denial and publication of that denial of an application by a board of adjustment as sufficient to satisfy the *488 requirement that it "render a decision" within 120-day period so as to prevent its conduct from being deemed inaction constituting a decision favorable to the applicant within the meaning of N.J.S.A. 40:55D-73(b). As Judge Havey said in the Aurentz case, supra, 171 N.J. Super. at 142, "the automatic approval mechanism should be applied with caution both by municipal agencies and the court." Judge Havey points out that in many instances an applicant or board members who favor an application but lack sufficient affirmative votes could successfully cause a stalemate that would result in no action at all being taken.[2] The failure to take any action at all would then constitute approval despite the lack of a sufficient number of votes required by the statutory scheme in order to constitute an intentional approval of an application.
We see another problem in the provision whereby inaction constitutes approval of an application. N.J.S.A. 40:55D-17(a) provides that any interested party who desires to appeal the decision of a municipal agency "shall" i.e., must, appeal to the governing body (1) from any final decision of a board of adjustment approving an application for a use variance under N.J.S.A. 40:55D-70(d), and (2) from any other final decision of a board of adjustment or planning board on any application for development, if permitted by ordinance. This section also mandates that the appeal be taken within ten days of the date of publication of such final decision, pursuant to N.J.S.A. 40:55D-10(i). This latter subsection provides that the time for appeal shall run from the date of the first publication of the decision. Applying these provisions to the case at hand, we see that a decision was rendered on January 2, 1980 and notice thereof was published on January 17, 1980. Normally, one would expect that an appeal should be taken by the losing party within the time permitted following publication. In this case, Kozub's application was *489 denied, but he did not file an appeal. By a quirk in the law, however, the denial of the variance could be transformed into approval by the failure of the Board to adopt a proper resolution after rendering its decision. But who is to know that has happened? The objectors have returned to their homes satisfied with the result. They are given no notice of the non-action by the Board of Adjustment. There is no provision in the law for publication of the change in result. The statute does not require publication of a non-decision, of the non-adoption of an appropriate resolution. Thus, the time for appeal from the changed result would never run. More seriously, the statutory mechanism does not provide for giving notice of the new result to objectors who knew only of the board's original decision. The statutory mechanism provides for an appeal when a proper resolution is adopted, but provides no notice and, in effect, no right of appeal for a party who opposed an application that was originally denied but became approved by subsequent inaction.
Accordingly, we hold that the statute in effect at the time the Board denied the variance application on January 2, 1980, notice of which was published later in the month, required Kozub to file his appeal within ten days of January 17, 1980, notwithstanding that the board of adjustment thereafter failed to adopt a resolution containing findings of fact and conclusions. Since the board rendered a decision within the 120-day period contemplated by N.J.S.A. 40:55D-73(b) which should have been appealed to the Vernon Township governing body, subsequent inaction of the Board does not transform the variance denial into approval. See Kessler v. Bowker, 174 N.J. Super. 478, 488-489 (App. Div. 1979), in which the court reviewed the action of a governing body on appeal from a board of adjustment which denied an application without giving any reasons. We note also that the appeal to the governing body calls for a de novo determination based on the record made before the board of adjustment. Evesham Tp. Bd. of Adj. v. Evesham Tp., 87 N.J. 295 (1980), rev'g 176 N.J. Super. 503 (App.Div. 1980); Kessler v. Bowker, supra, at 489.
*490 Amendments to N.J.S.A. 40:55D-10(g), which became effective after the board acted on Kozub's application, have clarified the legislative intent but do not solve the problems we have discussed. The amendments provide that a municipal agency may adopt the written decision and findings and conclusions either on the date of the meeting at which action is taken granting or denying an application or at a later date. If the meeting occurs within the final 45 days of the applicable time period for rendering a decision, the resolution memorializing the agency's action may be taken within 45 days of that meeting. The amendments go on to clearly distinguish the "resolution of memorialization" from the "action" of the agency granting or denying approval of an application. However, the amendments specifically provide that the failure to adopt a resolution within the 45 day period "shall result in the approval of the application for development, notwithstanding any prior action taken thereon." The amendments also provide that the date on which the resolution of memorialization is adopted constitutes the date of decision for the purposes of mailings, filings and publications required by subsections (h) and (i) of N.J.S.A. 40:55D-10(g). There is no provision for publication of notice of the failure to adopt a resolution of memorialization.
The transformation of a denial of an application into approval by the failure of an agency to adopt a resolution giving reasons for its decision will always cause difficulties. We agree with the legislative view that it is important for municipal agencies to make proper findings of fact and to give reasons for their decision. But problems are created by saying that the failure to do so within a given time constitutes approval of an application. As we stated above, the application may be one which the agency could not lawfully approve in the first place by affirmative action. If the legislation were to provide that the failure to act within a given period of time constitutes a denial rather than approval of an application, at least the applicant would know that he ought to appeal that denial. However, the transformation of a publicly voted and published denial into approval *491 by silence and inaction creates practical problems for opponents of the application and serious legal problems as well.
In the circumstances of this case the trial judge held that plaintiff should be allowed to appeal the denial of his application to the governing body within ten days of the court's order. By implication he ruled that the denial of plaintiff's application by formal board action was not transformed into approval by the board's subsequent failure to adopt a memorializing resolution. No appeal was taken from the judge's ruling that Kozub should be allowed to file a late appeal to the governing body, and that course seems just in this case.
Accordingly, we affirm the order below. The case is remanded to the trial court where jurisdiction was retained pending the outcome of plaintiff's appeal to the governing body.
NOTES
[1] By amendment adopted in October 1979, effective February 1, 1980 as we interpret § 28 of L. 1979, c. 216 N.J.S.A. 40:55D-10(g) was expanded to read as follows:

g. Each decision on any application for development shall be reduced to writing as provided in this subsection, and shall include findings of facts and conclusions based thereon.
Failure of a motion to approve an application for development to receive the number of votes required for approval shall be deemed an action denying the application.
The municipal agency may provide such written decision and findings and conclusions either on the date of the meeting at which the municipal agency takes to grant or deny approval, or, if the meeting at which such action is taken occurs within the final 45 days of the applicable time period for rendering a decision on the application for development, within 45 days of such meeting by the adoption of a resolution of memorialization setting forth the decision and the findings and conclusions of the municipal agency thereon. An action resulting from the failure of a motion to approve an application shall be memorialized by resolution as provided above, notwithstanding the time at which such action occurs within the applicable time period for rendering a decision on the application.
The adoption of a resolution of memorialization pursuant to this subsection shall not be construed to alter the applicable time period for rendering a decision on the application for development. Such resolution shall be adopted by a vote of a majority of the members of the municipal agency who voted for the action previously taken, and no other member shall vote thereon. The vote on such resolution shall be deemed to be a memorialization of an action of the municipal agency, and not to be an action of the municipal agency; except that failure to adopt such a resolution within the 45 day period shall result in the approval of the application for development, notwithstanding any prior action taken thereon.
Whenever a resolution of memorialization is adopted in accordance with this subsection, the date of such adoption shall constitute the date of the decision for purposes of the mailings, filings and publications required by subsections h. and i. of this section.
[2] The Legislature attempted to meet this objection by providing that a majority of those who voted for the action taken control the adoption of the memorializing resolution. N.J.S.A. 40:55D-10(g), as amended.