DIANE LIZAK AND JOHN SOLANO AND MARGE SOLANO, PLAINTIFFS-RESPONDENTS, v. MANUEL AND C. FARIA, DEFENDANTS-APPELLANTS, AND TOWNSHIP OF WOODBRIDGE AND ZONING BOARD OF ADJUSTMENT, DEFENDANTS-RESPONDENTS.

MANUEL AND C. FARIA, PLAINTIFFS-APPELLANTS, v. DIANE LIZAK, JOHN AND MARGE SOLANO, TOWNSHIP OF WOODBRIDGE MUNICIPAL COUNCIL, TOWNSHIP OF WOODBRIDGE BUILDING DEPARTMENT, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1982—Decided July 11, 1983.

Before Judges BOTTER, POLOW and BRODY.

*Raymond W. Fisher* argued the cause for appellants (*Young, Rose & Millspaugh,* attorneys; *Frederick W. Rose, Raymond W. Fisher* and *Kenneth C. McBroom,* on the brief).

*William W. Hart, Jr.,* argued the cause for respondents Lizak and Solano.

*Richard W. Kracht* argued the cause for respondents Woodbridge Municipal Council and Woodbridge Building Department (*Dato, Kracht & Gill,* attorneys).

*Francis J. Reilly* argued the cause for respondent Woodbridge Zoning Board of Adjustment.

The opinion of the court was delivered by

BOTTER, P.J.A.D.

This is another controversy spawned by the troublesome provisions in the Municipal Land Use Law, *L.*1975, *c.* 291; *N.J.S.A.* 40:55D–1 *et seq.,* which appellants contend transformed a denial of their variance application into approval by reason of the failure of the Board of Adjustment (Board) to adopt a written memorializing resolution with findings of fact and conclusions. *N.J.S.A.* 40:55D–10(g); *N.J.S.A.* 40:55D–73(b); *Kozub v. Opt'Hof,* 180 *N.J.Super.* 482 (App.Div.1981), overruling *Gridco, Inc. v. Hillside Tp. Zoning Bd.,* 167 *N.J.Super.* 348 (Law Div. 1979); *see Precision Industrial Design Co. v. Beckwith,* 185 *N.J.Super.* 9, 18–19 (App.Div.1982), certif. den. 91 *N.J.* 545 (1982); *Aurentz v. Planning Bd. of Little Egg Harbor,* 171 *N.J.Super.* 135 (Law Div.1979). The opinion in this case, 180 *N.J.Super.* 248 was delivered by Judge Cohen before our opinion in *Kozub, supra,* overruled the trial court opinion in *Gridco, supra.* Notwithstanding that another trial court opinion, *Aurentz v. Little Egg Harbor Tp. Planning Bd., supra,*[1] was inconsistent with the holding in *Gridco,* the parties in this case and Judge Cohen proceeded on the premise that the Board's failure to adopt a proper resolution memorializing their announced decision denying the variance constituted approval of the variance. In an admirable opinion, Judge Cohen held, however, that such an "approval" was a decision which could be appealed to the municipal governing body under *N.J.S.A.* 40:55D–17. He also held that the time to appeal does not begin to run until notice of such decision by inaction is published. He qualified this holding by saying that aggrieved parties must nevertheless act within a reasonable time of actual knowledge of approval by inaction, even if notice is not published by the applicant or a municipal officer as required by *N.J.S.A.* 40:55D–10(i). He concluded that neighboring property owners appealed the statutory grant within time and that the governing body properly

---

[1] The holdings in the *Aurentz* and *Kozub* cases were cited with approval in this court's opinion in *Precision Indus. Design Co. v. Beckwith, supra.*

denied the variance, as the Board had done initially, because there was no conceivably valid basis for granting the variance in this case. Accordingly, he ordered appellants to demolish the partially constructed addition to the building on their property. We now affirm. We write briefly to express a different basis for the result and to again urge the Legislature, as we did in *Kozub,* to consider the need to amend the statute to avoid the parade of horrors which this case typifies.

We will add to some of the facts given in Judge Cohen's opinion in the trial court. Appellants, Manuel and C. Faria (the Farias) were owners of property on which there existed a building used for commercial and residential purposes. The dimensions of the irregular site were approximately 211 feet by 125 feet. The property contained a gasoline station and a two story building, the first floor of which was devoted to commercial use and the second floor to residential use. The structure was nonconforming because it violated front, rear and side yard setback requirements and contained a mixed use. Nevertheless, the Farias filed an application for a variance to construct an addition to the building of irregular shape approximately 28 feet by 68 feet to be used for commercial purposes. They also sought to add a 10,000 gallon underground gasoline storage tank for the service station.

After the application was amended several times to conform with recommendations of municipal officials, a hearing was held by the Board of Adjustment on September 6, 1979. The Director of Planning and Developing recommended approval, noting, among other things, that the installation of the underground storage tank would not affect the nonconforming location of the gasoline pumps and would not affect the appearance of the site. The Planning Board also recommended approval, subject to various conditions and modifications agreed to by the Farias. Nevertheless, at the adjourned Board of Adjustment meeting held on September 27, 1979, the application was denied on motion made and carried unanimously, with one abstention. No reasons were given and no resolution was ever adopted

containing findings of fact and conclusions. The secretary to the Board testified in the trial court that she had begun preparing a resolution and had discussed the matter with the Board's attorney, but nothing was ever done thereafter.

A number of objectors had spoken against the application at the Board hearing on September 6, including respondents Lizak and Solano. They and the Farias knew that the application was denied by the Board at its September 27 meeting. The Farias did nothing thereafter until May 1980, when Mr. Faria prepared to resubmit the application. However, as noted in Judge Cohen's opinion, the Farias and their attorney thereafter took the position that the Board's failure to adopt a resolution with findings of fact and conclusions converted the denial into a grant of the variance. The township attorney agreed. Without published or actual notice to objecting neighbors or the public in general, the Municipal Clerk certified on July 10, 1980 that a variance had been granted, and on July 11, a building permit was issued.[2] This municipal action occurred approximately 9½ months after the Board publicly voted to deny the variance. Construction of the addition commenced on July 21, 1980 and continued at a very rapid pace on 6 or 7 days a week until August 17, 1980, when a stop order was issued. The exterior of the building was almost complete by that time, representing a cost of approximately $60,000 of the total estimated cost of the project of approximately $140,000, according to Mr. Faria, who was in the construction business. Respondent Lizak, a neighbor, realized something was amiss in July when she saw the site being cleared for construction. Municipal officials were contacted and the governing body hired an attorney to advise it of the availability of an appeal from the action or inaction of the Board of Adjustment. However, shortly thereafter the council voted to rescind the resolution hiring the attorney. In the meantime

---

[2] The municipal attorney instructed the municipal clerk to issue a written certification that the Faria application be deemed approved pursuant to N.J.S.A. 40:55D–73. He relied on the holding in *Gridco, supra.*

Lizak sent an "appeal letter" to the council on August 7, 1980, and later sent another letter asking that her appeal be heard and that the building inspector issue a stop work order.

An appeal was scheduled before the Municipal Council in September 1980, and notice of the appeal was published by Lizak in a local newspaper. Lizak also started an action in the Chancery Division on August 20, 1980 to restrain the construction and revoke the building permit. The Municipal Council heard the appeal on September 9, 1980 and took testimony similar to that given before the Board of Adjustment. The Farias' attorney did not object to this procedure. The matter was continued thereafter to obtain additional information to clarify the application. Ultimately, on September 30, 1980, the Municipal Council adopted a written resolution denying the application "for a use variance permitting the expansion of a non-conforming use" and reversing the "statutory mandated decision of the Board of Adjustment" which came about by reason of its failure to adopt a formal resolution memorializing its denial of the application.[3] The Council's resolution also revoked the building permit previously issued and ordered construction terminated and the demolition of the partially constructed addition. Thereafter, on October 7, 1980 appellants filed an action in the Chancery Division to invalidate the action taken by the Municipal Council. Both actions were then consolidated in the trial court.

*N.J.S.A.* 40:55D–73(a) provides that a board of adjustment "shall render a decision not later than 120 days after the date (1) an appeal is taken from the decision of an administrative officer or (2) the submission of a complete application for development . . . pursuant to [*N.J.S.A.* 40:55D–72]." Subsection (b) of this section of the Municipal Land Use Law provides that failure of

---

[3]The resolution recited that the applicant failed to demonstrate criteria showing why the variance should be granted and found specific detrimental effects if the variance were granted, including the "overcrowding of an already under-sized lot."

a board of adjustment to render a decision within that time period or within an extended time period consented to by the applicant "shall constitute a decision favorable to the applicant." *N.J.S.A.* 40:55D–10(g) provides that every "decision" on an application for development shall be in writing and shall include findings of facts and conclusions based thereon. As Judge Cohen noted, prior to its amendment by *L.*1979, *c.* 216, the statute did "not plainly say what happens" if a municipal agency fails to adopt a proper memorializing resolution. 180 *N.J.Super.* at 254. In *Gridco, supra,* a Law Division judge held that the failure to adopt a memorializing resolution within the 120 day limit was equivalent to the failure to render a timely decision and constituted "a decision favorable to the applicant" within the meaning of *N.J.S.A.* 40:55D–73(b). We disagreed with this conclusion in *Kozub v. Opt'Hof, supra,* 180 *N.J.Super.* at 487–489. In *Kozub* an application for a variance to alter an existing building was denied by public vote of the Board of Adjustment on January 2, 1980, after a full hearing. Notice of the denial was published shortly thereafter in a local newspaper. However, no formal resolution was adopted containing findings of fact or conclusions. We held that the denial by public vote was a "timely decision" within the meaning of *N.J.S.A.* 40:55D–73(b). We held also that the time to appeal from that decision began to run on the date of first publication as provided by *N.J.S.A.* 40:55D–10(i).

As amended effective February 1, 1980,[4] the provisions of *N.J.S.A.* 40:55D–10(g) are inconsistent with our holding in *Kozub.* Subsection (g), as amended, alters the time period within which a "resolution of memorialization" can be adopted. But the subsection was also amended to provide ". . . that failure to adopt such a resolution within the 45 day period shall result in the approval of the application for development, *notwithstand-*

---

[4] *L.*1979, *c.* 216, § 28; *Kozub v. Opt'Hof, supra,* 180 *N.J.Super.* at 485, n. 1.

*ing any prior action taken thereon."* [Emphasis added.] [5] Nevertheless, the action taken by the Board of Adjustment in the case at hand occurred in September 1979, before *N.J.S.A.* 40:55D–10(g) was amended. Thus, the action of the Board and the parties prior to February 1, 1980 is governed by the interpretation of the statutes given in *Kozub,* with which we agree. We conclude that the public announcement of the Board's denial of the Farias' application for a variance at the September 27, 1979 meeting was a timely decision within the meaning of *N.J.S.A.* 40:55D–73(b) despite the failure to publish notice of that denial and the failure to adopt thereafter a proper memorializing resolution. This conclusion calls for an affirmance of the result reached below, namely, the invalidation of the statutory grant of approval by inaction, and makes it unnecessary for us to consider a number of points raised on this appeal. Nevertheless, there are some contentions which we must still consider.

The Farias contend that the stipulation by the parties in the trial court in December 1980 before *Kozub* was decided, to the effect that the Board's failure to adopt a memorializing resolution constituted approval of the application for a variance, precludes reconsideration of that issue. We disagree. Notwithstanding that stipulation, the judgment in this case invalidated the issuance of the variance and the building permit. Appeals are taken from judgments and not from opinions or reasons given in those opinions. *Glaser v. Downes,* 126 *N.J.Super.* 10, 16 (App.Div.1973), certif. den. 64 *N.J.* 513 (1974). In deciding this case we are not bound by any stipulation or concession concerning the interpretation of a statute. *Fivehouse v. Passaic Valley Water Comm'n,* 127 *N.J.Super.* 451, 457–458 (App.Div.) certif. den. 65 *N.J.* 565 (1974); *Tibbs v. Boemi,* 109 *N.J.Super.* 200, 204 [App.Div., aff'd on opinion below, 55 *N.J.* 531 (1970)]. We reject, also, appellant's contention that the parties and the Woodbridge governing body should be equitably estopped from

[5]See note 6, below.

denying the validity of the building permit issued on the basis of a statutory grant of the variance application. We note that for a period of many months the Farias acted on the assumption that the denial of their application was valid. It was not until July 1980, following a publicly announced denial in September 1979, that appellants persuaded the municipal attorney to authorize the municipal clerk to certify to the statutory approval of the application. No notice of this action was given to the Board of Adjustment or to neighbors who objected to the application and also believed for a long period of time that the application was properly denied. Even after the building permit was issued Mr. Faria knew that its issuance was being questioned. As the trial judge noted, there was no publication of any decision approving the variance. *N.J.S.A.* 40:55D–10(i) provides that the time in which an appeal may be taken begins to run from the date of first publication of a decision, and an appeal from the issuance of the building permit would normally stay the effectiveness of the permit. (*See N.J.S.A.* 40:55D–17(f); *N.J.S.A.* 40:55D–75). The Farias were represented by an attorney. No careful attorney could fail to realize the many questions raised by various sections of the law applicable to the Farias' claimed right to the variance. Thus, we cannot say that the equities favored the Farias in this situation to the extent that the governing body and objecting neighbors should be estopped from attacking the building permit that was issued at the Farias' instigation.

Appellants raise a number of other issues concerning the interpretation of various sections of the Municipal Land Use Law in the light of the amendment to *N.J.S.A.* 40:55D–10(g) enacted in 1979, effective February 1, 1980. Judge Cohen's opinion answers a number of these questions. Our disposition of the case on other grounds makes it unnecessary for us to review those aspects of his decision. Nevertheless, because the issues are pertinent to legislative reconsideration of the existing law, we note some of these issues.

Appellants contend that a statutory grant of a variance (and, by implication, any other application for development), by reason of inaction or an agency's failure to adopt an appropriate memorializing resolution, is not an appealable decision. They contend that the statute contains no provision authorizing the appeal of a so-called statutory grant. *N.J.S.A.* 40:55D–17(a) permits an appeal from a final decision of a board of adjustment, but appellants contend that a statutory grant is not a final decision of a board of adjustment. They contend that, allowing an appeal from a statutory grant resulting from inaction of a board of adjustment would nullify the purpose of the statute, namely, to effectuate a result notwithstanding such inaction. In *Kozub, supra,* we noted many of the disadvantages of the statutory grant of approval based upon inaction of a municipal body. The opinion in *Precision Industrial Design Co. v. Beckwith, supra,* also notes that automatic statutory approval due to inaction would often produce results harmful to the public interest which are far disproportionate to the evils sought to be remedied, namely, delays and deficiencies in conduct of municipal agencies. 185 *N.J.Super.* at 18–19. In *Kozub, supra,* we noted that approval by inaction could often result in a development that is contrary to the substantive provisions of the Municipal Land Use Law. One example typified in this case is the approval of a variance that the trial judge found could not be accomplished under any conceivable interpretation of the evidence produced by the Farias in support of their application. This variance would allow the expansion of a nonconforming use contrary to accepted principles, without a showing of appropriate hardship grounds, and contrary to the finding of the governing body that the variance could not be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the municipal master plan and zoning regulations.[6]

---

[6]We question whether the Legislature intended to grant statutory approval (by inaction) to a variance application that could not lawfully be granted in

Assuming, however, that Judge Cohen's interpretation is correct, that the Legislature must have intended to allow an appeal from a statutory grant of approval, one may question what is reviewable on such appeal. Is the appeal to be limited to the propriety of the issuance of a building permit based upon the so-called statutory grant of approval, or may the appeal consider the grounds on which the variance was sought in the first instance? Appellants contend that allowing an appeal from a statutory grant where there was no reasonable forewarning that such an appeal would exist is a denial of due process. Opposing neighbors and the public in general may contend that a statutory grant of approval that reverses a publicly announced decision upon which they relied, without actual further notice to them, would violate their due process rights. We mention these issues only to emphasize the problems forecast by our opinion in *Kozub* which result from the statutory grant of approval through inaction or the failure to adopt a proper memorializing resolution. These problems are illustrated by the cases cited in this opinion and the case at hand. In *Kozub, supra,* 180 *N.J.Super.* at 490, we noted that there is no specific provision for publication of notice of the failure to adopt a memorializing resolution. Yet the statutory scheme provides for appeals to be taken within 10 days of the date of publication of a final decision. Doubtless, applicants are entitled to prompt and reasonable consideration by municipal agencies, and reviewing bodies ought to have the benefit of appropriate findings and conclusions. Nevertheless, transforming denials into approvals by operation of law can create many doubts and, possibly, havoc. As we did in *Kozub, supra,* we again urge the Legislature to reconsider these statutory provisions.

Affirmed.

---

the first place in the sense that it did not comply with substantive statutory criteria.