DIANE LIZAK, JOHN SOLANO, AND MARGE SOLANO, PLAIN-
TIFFS-RESPONDENTS, v. MANUEL AND C. FARIA, DEFEND-
ANTS-APPELLANTS, AND TOWNSHIP OF WOODBRIDGE
BUILDING DEPARTMENT AND ZONING BOARD OF ADJUST-
MENT, DEFENDANTS-RESPONDENTS.

MANUEL AND C. FARIA, PLAINTIFFS-APPELLANTS, v. DIANE
LIZAK, JOHN AND MARGE SOLANO, TOWNSHIP OF WOOD-
BRIDGE MUNICIPAL COUNCIL, AND TOWNSHIP OF WOOD-
BRIDGE BUILDING DEPARTMENT, DEFENDANTS-RESPON-
DENTS.

Argued February 21, 1984—Decided June 19, 1984.

484

*Raymond W. Fisher* argued the cause for appellants (*Young, Rose & Millspaugh,* attorneys).

*William W. Hart, Jr.* argued the cause for respondents Diane Lizak, John Solano, and Marge Solano.

*Joseph R. Bulman* argued the cause for respondents Township of Woodbridge Municipal Council and the Township of Woodbridge Building Department (*Arthur W. Burgess,* attorney).

*Wayne J. Peck*, on behalf of respondent Zoning Board of Adjustment, relied on the argument for respondents Diane Lizak, et al.

The opinion of the Court was delivered by

POLLOCK, J.

This case presents questions concerning the interpretation of certain provisions of the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D-1 to -99, that pertain to the failure of a board of adjustment to render a written decision memorializing its oral denial of a request for a variance. At issue is whether the statute converts such a failure into a grant of the variance. Also at issue is whether such statutory grants are appealable to the governing body and, if so, the time limits within which an appeal must be taken from such a grant.

The trial court found such statutory grants to be appealable to the governing body. 180 *N.J.Super.* 248, 255-56 (1981). That court noted that *N.J.S.A.* 40:55D-17a requires an appeal to be taken within ten days from the date of publication of notice of the board decision. *Id.* at 256. When, as here, the applicants did not publish a notice, interested parties may appeal within a reasonable time. *Id.* at 256-58. Furthermore, the court found that the objectors had acted with reasonable dispatch in filing their appeal. *Id.* at 258. Consequently, the trial court affirmed the resolution of the governing body adopted on appeal that, among other things, reversed the statutory grant of the variance resulting from the inaction of the Woodbridge Township Board of Adjustment (Board).

Although the Appellate Division affirmed the trial court's ruling, it based its decision on the rationale that the Board's oral denial was a timely decision within *N.J.S.A.* 40:55D-73 and, therefore, that no variance was granted under the statute. 191 *N.J.Super.* 10 (1983). We granted certification, 95 *N.J.* 198 (1983).

We hold that under the version of the MLUL that remains in effect until July 1, 1984, the failure of the Board to memorialize its oral denial of the application for a use variance resulted in the statutory grant of that application. Furthermore, we hold that such grants are appealable under the MLUL and that those appeals must be taken within a reasonable time when there is no publication to trigger the ten-day period for appeal. We agree that the objectors in this case acted with reasonable promptness and conclude that their appeal to the governing body was timely. Our decision draws substantially on the reasoning of the Chancery Division and discusses the impact of certain amendments to the MLUL that have been enacted since the date of the Appellate Division decision.

I

The property that is the subject of this appeal is located in a business (B–3) zone along St. Georges Avenue, in the Colonia section of Woodbridge Township. It is an irregular lot, approximately 211' × 125', and contains a gasoline station as well as a mixed use structure consisting of a real estate agency on the first floor and a second floor apartment, which is occupied by the property owners, Mr. and Mrs. Faria.

The mixture of residential and commercial uses contravenes the ordinance as do certain violations of bulk requirements: the gasoline pumps violate the twenty-five foot front yard set back requirement, and the other uses violate side and rear yard requirements. Nonetheless, the use of the property constitutes a pre-existing non-conforming use.

Five years ago, Mr. Faria, who is a builder, sought to expand the non-conforming use by constructing a 28' × 68' addition to the building (more than double the existing office space). He also sought to install an additional 10,000 gallon storage tank beneath the service station. The proposed expansion would increase from ten to fourteen the number of required parking spaces and reduce the rear yard buffer zone from twenty-five

to five feet. The property abuts a residential zone, and the neighboring properties to the rear are single-family residences.

On June 26, 1979, the Farias applied to the Board for necessary variances. At the hearing on September 6, 1979, the Board received letters from the director of planning and development and the Planning Board recommending approval of the application. However, several neighbors, including Mrs. Lizak, vigorously objected. Mrs. Lizak pointed out that the encroachment of the parking area into the rear yard buffer zone would place blacktop directly beneath her bedroom window. She also testified about unsightly debris the Farias allowed to accumulate on their property. Other neighbors protested about poor drainage from the property, increased off-street parking from the multiple uses, and an increased risk of traffic accidents from the proposed parking arrangements.

Three weeks later, at a public meeting on September 27, 1979, the Board, with one abstention, unanimously voted to deny the variance. The Board, however, never adopted a written resolution memorializing its findings of facts and conclusions as required by *N.J.S.A.* 40:55D–10g. Nonetheless, the Farias as well as the objectors knew of the oral denial by the Board.

Instead of appealing the denial, the Farias waited until May 1980 when Mr. Faria consulted an attorney about resubmitting the application. Upon discovering that the Board had not adopted a written resolution, Mr. Faria's attorney conferred with the township attorney in June 1980. Relying on *Gridco, Inc. v. Zoning Bd. of Hillside*, 167 *N.J.Super.* 348 (Law Div. 1979), the two attorneys agreed that the failure to adopt a written resolution converted the Board's vote to deny the variances into an automatic grant.

In *Gridco, Inc.*, the Law Division interpreted three provisions of the MLUL. *Id.* at 350–52. The first, *N.J.S.A.* 40:55D–73a, provides:

> The board of adjustment shall render a decision not later than 120 days after the date (1) an appeal is taken from the decision of an administrative officer or (2) the submission of a complete application for development to the board of adjustment pursuant to section 59b. [*N.J.S.A.* 40:55D–72] of this act.

The second provision, *N.J.S.A.* 40:55D–73b, states:

> Failure of the board to render a decision within such 120-day period or within such further time as may be consented to by the applicant, shall constitute a decision favorable to the applicant.

The third section, *N.J.S.A.* 40:55D–10g, provided at the time of the *Gridco, Inc.* decision that each decision on an application for development, such as a request for a variance, shall be in writing "and shall include findings of facts and conclusions based thereon."

In *Gridco, Inc., supra,* 167 *N.J.Super.* at 349, the Board of Adjustment denied a use variance, but failed to adopt a written resolution within 120 days of the date of submission. Because of the failure to adopt such a resolution within the statutory time limits, the Law Division granted summary judgment approving the variance. *Id.* at 353.

In the instant matter, the Woodbridge Municipal Clerk certified the grant of the variance on July 10, 1980, and on the following day, the Farias obtained a building permit. They began to build on July 21, 1980, and construction proceeded apace. Within a month, the exterior of the building was completed at an estimated expense of $60,000, almost one-half of the estimated total cost of the project. At no time, however, did the Farias or the municipality publish a notice that the failure of the Board to adopt a written resolution resulted in a statutory grant of the requested variance.

Notwithstanding the lack of publication of notice, as the Chancery Division found,

> [t]he neighbors knew on July 16 that the permit had been issued. It is unclear whether they knew even earlier that something was amiss. A councilman testified that the most active objecting neighbor [Lizak] communicated her concern to him as early as the July 4 weekend. That neighbor testified she was aware that trees were being felled in early July and knew by July 9 that the Farias had applied for a building permit but had not yet received it. [180 *N.J.Super.* 248, 251 (1981).]

Stimulated by inquiries from the neighbors, who petitioned the Municipal Council on August 7 for a hearing, the governing body briefly consulted outside counsel to determine whether the neighbors could appeal the statutory grant of approval. The trial court found that the neighbors' actions were "reasonably prompt and sufficiently public," 180 *N.J.Super.* at 252, and that the Farias knew in early August both that the neighbors were seeking relief from the Council and that the Council had sought outside legal advice.

On August 20, 1980, Mrs. Lizak filed a *pro se* action seeking revocation of the building permit issued to the Farias, and she obtained a temporary restraining order enjoining further construction. The Council heard the appeal of the protesting neighbors on September 9, 1980. On September 30, 1980, the Council adopted a written resolution denying the application for a variance, reversing the statutory grant by the Board, revoking the building permit, and ordering the removal of the partially constructed addition.

As a result of the Council's action, Mrs. Lizak, now joined by other neighbors, amended her complaint to seek a determination that the appeal to the Council was timely, that the Council's denial of the variance was proper, and that the structure be removed. The Farias also sued, seeking a ruling that the statutory grant was not appealable or, if so, that the appeal to the Council was out-of-time. They also asserted that the Council's denial was arbitrary and that their reliance on the building permit estopped the Council from hearing the appeal. The separate actions were consolidated for trial.

At trial, the Chancery Division adopted the *Gridco, Inc.* rule and found that the Board's failure to adopt a written resolution resulted in the grant of the requested variance. *N.J.S.A.* 40:55D–73b. The trial court continued, however, by finding that the statutory grant of a variance resulting from the failure of the Board to adopt a timely resolution should be subject to review on appeal. 180 *N.J.Super.* at 255. Judge Cohen noted

that purposeful decisions following open deliberations are expressly appealable and reasoned that "[a] decision reached by calculated inaction or inadvertent inattention does not deserve greater respect." *Id.* The court stated further that an appeal from a municipal agency such as a board of adjustment should be made within ten days of the date of publication of a final decision. *N.J.S.A.* 40:55D-17a. When, as here, no publication ever occurred, the court ruled that an appellant "must act within a reasonable time * * *." *Id.* at 258.

With respect to the Farias' argument that the governing body was estopped from reversing the variances and revoking the building permit, the trial court found:

> The Farias' July and August activity relied upon a building permit that was issued before the neighbors initiated their appeal to the township council. The permit was properly issued but it was subject to appeal for 20 days under *N.J.S.A.* 40:55D-72(a). The 'variance' underlying the permit was itself still subject to appeal for all of the reasons explained in this opinion. Either appeal automatically stays any proceedings under the permit. *N.J.S.A.* 40:55D-75. So, although the Farias may have relied on the regularity of the permit, their reliance can not convert the permit into something not subject to administrative and judicial review. They could not reasonably have relied upon the inviolability of municipal actions that were still subject to appeal. The municipal attorney's opinion and the construction official's action assured the Farias that a permit was issuable, but not that the variance was not appealable. As to that matter, they took their chances. [*Id.* (citation omitted).]

Finally, the trial court deemed it unnecessary to decide whether the statutory grant of a variance resulting from board inaction enjoys a presumption of validity. The court stated that it need not reach the issue

> because there is no reasonably conceivable standard of review that could legitimize the grant of a variance to the Farias on the evidence that was produced before the board. There is no point reciting the proofs. Suffice to say that there was no evidence at all to show practical difficulties or hardship, to satisfy the negative criteria or, ultimately, to justify the relief the Farias sought. *N.J.S.A.* 40:55D-70. The board of adjustment saw that and voted to deny the variance. The township council saw it, too, and voted to deny the variance. It is equally plain to this court. [*Id.* at 259.]

In affirming, the Appellate Division approved the result, but not the reasoning, of the Chancery Division. Judge Botter, writing for the court, began by observing that the Board's

action occurred in September, 1979 before an amendment to *N.J.S.A.* 40:55D–10g, which stated that a failure to adopt a resolution of memorialization leads to a statutory grant of the requested relief. 191 *N.J.Super.* 10, 18 (1983).

The Appellate Division relied on *Kozub v. Opt'Hof,* 180 *N.J.Super.* 482 (App.Div.1981), which purported to overrule *Gridco, Inc., supra,* 167 *N.J.Super.* 348. The *Kozub* court held that the oral denial by a board of adjustment through a public vote, although not memorialized in writing, was a ·"timely decision" under *N.J.S.A.* 40:55D–73b. In *Kozub,* notice of the denial of the variance was published as required by *N.J.S.A.* 40:55D–10i, but no notice was given of the statutory grant resulting from the board's failure to adopt a written resolution. The *Kozub* court described the transformation of the denial of the variance into approval by the failure to adopt a resolution as "a quirk in the law." *Kozub, supra,* 180 *N.J.Super.* at 489. Noting that the statute does not require publication of a notice of the failure to adopt a resolution, the court concluded that the time for appeal would never run. *Id.* Furthermore, the *Kozub* court observed that objectors who thought the requested result had been denied would not know that the result had been reversed by inaction. *Id.*

In the present case, the Appellate Division found that the public oral denial by the Board was a timely decision, despite the failure to publish notice of that denial and to adopt a memorializing decision. 191 *N.J.Super.* at 18. Nonetheless, the Appellate Division acknowledged that the amendment of *N.J.S.A.* 40:55D–10g, which specified that a failure to adopt a resolution of memorialization leads to a statutory grant, was inconsistent with *Kozub.* *Id.* at 17. Because the action of the Board occurred before the effective date of the amendment, the Appellate Division concluded that *Kozub* should govern, and that the oral denial, although not memorialized in a written resolution, sufficed to deny the application.

## II

One of the purposes of the MLUL, which became effective August 1, 1976, was to expedite the decision of land use applications. *Public Hearing before Senate, County and Municipal Government Committee on Senate Bill No. 3054* 1 (April 3, 1975) (remarks of Senator Greenberg). The MLUL achieved this purpose by establishing procedures and guidelines before "municipal agencies," which are defined to include boards of adjustment, planning boards, and governing bodies. *N.J.S.A.* 40:55D–5; *Manalapan Holding Co. v. Hamilton Tp. Planning Bd.*, 92 *N.J.* 466, 476 (1983); *Levin v. Parsippany-Troy Hills Tp.*, 82 *N.J.* 174, 178–79 (1980).

For example, the MLUL empowers a board of adjustment to consider "an application for development," *N.J.S.A.* 40:55D–3, which includes a request for a variance. *N.J.S.A.* 40:55D–70. Unless the applicant consents to an extension, the board must render a decision within 120 days of the submission of the completed application. *N.J.S.A.* 40:55D–73a(2). The decision must be in writing and include "findings of facts and conclusions based thereon." *N.J.S.A.* 40:55D–10g. Failure of the board to render a timely decision "shall constitute a decision favorable to the applicant." *N.J.S.A.* 40:55D–73b.

In contrast, the prior Municipal Land Use Act provided that the failure of a board to make a timely decision resulted in denial of the application. *N.J.S.A.* 40:55–39.1. Under the threat of an automatic statutory denial, boards sometimes would extract extensions of time from applicants, thereby delaying construction and making it more costly. By converting the failure to decide into the grant of an application, the MLUL eliminates unnecessary costs of development and encourages timely decisions by municipal agencies.

An amendment to *N.J.S.A.* 40:55D–10g, effective on February 1, 1980, extended the time period for rendering a decision when a meeting during which action was taken occurred within the "final 45 days of the applicable time period for rendering a

decision on the application." Under that amendment, the failure to adopt a "resolution of memorialization setting forth the decision and the findings and conclusions of the municipal agency thereon * * * within the 45 day period shall result in the approval of the application for development, notwithstanding any prior action taken thereon." *N.J.S.A.* 40:55D–10g. The significance of the 1980 amendment is the express provision that failure to adopt a resolution of memorialization results in approval of the application.

Effective July 1, 1984, 1984 N.J.Sess.Law Serv. ch. 20 (West), however, the Legislature again amended *N.J.S.A.* 40:55D–10g by deleting the provision for automatic approval added in the 1980 amendment. In its place, the 1984 amendment provides that if a municipal agency fails to adopt a resolution, "any interested party may apply to the Superior Court in a summary manner for an order compelling the municipal agency to reduce its findings and conclusions to writing within a stated time and the cost of the application, including attorney's fees, shall be assessed against the municipality."

The legislative history of the 1984 amendment corroborates the conclusion that after July 1, 1984, failure to reduce a resolution to writing no longer results in the automatic grant of a land use application and that the recourse of the parties is to seek a court order. Although the parties have neither briefed nor argued the effect of the 1984 amendment, its legislative history in this regard is straightforward.

In the current Legislature, the bill that became the 1984 amendment was introduced as A–1169, approved by both houses, and signed by Governor Kean on March 22, 1984. A similar bill, A–2107, was approved by both houses in the preceding legislative session, but Governor Kean declined to sign it because it was not delivered to him in sufficient time for review before the expiration of the legislative term. *Governor's Statement on Filing Unsigned Bill A–2107* (Jan. 17, 1984).

As introduced, A–2107 provided for "default approval" of land use applications. "Default approval" was defined in pro-

posed section 40:55D–10j to include the statutory grant of an application resulting "from the municipal agency's failure to provide a written decision with findings and conclusions as provided by subsection g [*N.J.S.A.* 40:55D–10g] of this section." Thus, A–2107 in its original form provided that the failure to reduce a decision to an appropriate writing was tantamount to the failure to render a decision under *N.J.S.A.* 40:55D–73. Another provision stated that "the applicant shall provide notice of the default approval to all those entitled to notice by personal service or certified mail of the hearing on the application for development * * *." The bill provided further that the time to appeal default approvals would begin to run from either the date of publication or the completion of the service of those notices.

All those provisions, however, were deleted by the Assembly Municipal Government Committee, which explained in its statement to A–2107:

> The Assembly Committee amendments delete (1) the provision making failure to provide the required detailed written decision an approval of the application for development, (2) the definition of 'default approval' and (3) provision for notice of default approval, [sic] The remaining remedy for failure of the board to provide the required detailed written decision is to apply for a court order compelling same and for the costs, including plaintiff's attorneys fees, to be assessed against the municipality.

This history of the predecessor bill, consistent with the statutory language of A–1169, makes clear that the intent of the 1984 amendment was to eliminate the automatic approval of an application resulting from the inaction of a municipal agency. Under that amendment, the remedy for failure of a municipal agency to reduce a decision to writing is recourse to the Superior Court for an order directing the preparation of findings of fact and conclusions.

The legislative history further reveals that statutory amendments relating to the time for appeal to the governing body have accompanied amendments pertaining to the effect of the failure of a municipal agency to reduce a decision to writing. In its current form, the statute provides that an interested party "shall appeal to the governing body" a final decision of a

board of adjustment approving an application for a "d" or use variance "within ten days of the date of the publication of such final decision." *N.J.S.A.* 40:55D–17a. The 1984 amendment changes the statutory mandate by providing that "any interested party may appeal to the governing body any final decision of a board of adjustment approving an application" for a use variance "if so permitted by ordinance."

Under the present law, as well as the 1984 amendments, the appeal "shall be decided by the governing body only upon the record established before the planning board or board of adjustment." *Id.* The 1984 amendments retain the power of the governing body to reverse, remand, or affirm the final decisions of those boards. *N.J.S.A.* 40:55D–17d.

In summary, before 1976 a board of adjustment was not obliged to adopt a written resolution, and the failure to make a timely decision was tantamount to a denial of the application. Under the MLUL, which became effective on August 1, 1976, the failure of a board of adjustment to render a timely decision results in an automatic approval of the application. By an amendment effective February 1, 1980, the Legislature expressly provided that failure to adopt a written resolution results in approval of the application. The most recent amendment to *N.J.S.A.* 40:55D–10g, effective July 1, 1984, deletes the automatic approval provision and replaces it with a requirement that any interested party may seek a court order compelling the agency to reduce its findings and conclusions to writing. This matter, which began with the filing of an application on June 26, 1979, is governed by the statute in its present form. *See, e.g., New Jersey Dep't of Envtl. Protection v. Ventron,* 94 *N.J.* 473, 498 (1983); *Kruvant v. Mayor & Council Tp. of Cedar Grove,* 82 *N.J.* 435, 440 (1980). Applying the original version of the MLUL, the Law Division in *Gridco, Inc., supra,* 167 *N.J. Super.* at 352–53, ruled that the failure to adopt a written resolution triggered the automatic approval provision of the statute. The Appellate Division in *Kozub, supra,* 180 *N.J.Super.* at 489, disagreed.

Notwithstanding constant changes in direction, the Legislature has consistently retained certain elements as essential to the statutory scheme for land use development. One of those elements is the encouragement of prompt consideration of land use applications. Although the consequences of delay have varied over the years, the Legislature clearly frowns upon municipal inaction. Equally clear is the direction that the decisions of municipal agencies should be in writing, and should set forth findings of fact and conclusions. Furthermore, interested parties should have the right to appeal from decisions of municipal agencies, and at least when a municipality has adopted an enabling ordinance, that right includes a right to appeal to the governing body.

The Law Division in *Gridco, Inc.*, like the Chancery Division in the present matter, concluded that the legislative intent could be effectuated by treating the failure to make a decision in writing as a non-decision triggering automatic statutory approval. At one point, the Legislature apparently reached the same conclusion. In the 1980 amendment to *N.J.S.A.* 40:55D–10g, the Legislature expressly provided that the failure to adopt a written resolution "shall result in the approval of the application for development, notwithstanding any prior action taken thereon."

██ We agree with the *Gridco, Inc.* analysis adopted by the Chancery Division that, even before the 1980 amendment, the Legislature contemplated that the failure to reduce a decision to writing was tantamount to municipal inaction. Accordingly, we reject the reasoning of the Appellate Division in both *Kozub, supra,* 180 *N.J.Super.* 482, and in the present case. Under the current version of *N.J.S.A.* 40:55D–10g, which will be superseded on July 1, 1984, we conclude that the failure of the Board to incorporate the oral denial into a written resolution transformed that denial into a grant of the application in favor of the Farias.

██ With respect to the right to seek review of the statutory grant of a variance, an interested party may appeal to the

governing body "any final decision of a board of adjustment approving an application for development." *N.J.S.A.* 40:55D–17a(1). It would be illogical to permit an appeal from a variance granted after careful deliberations but not from one that is denied after equally careful deliberations and then converted by statute into a grant. No legislative purpose would be served by foreclosing the right of an interested party to appeal a statutory grant. In fact, such a result would contravene the legislative intent by precluding neighbors and other members of the public, who may have objected vigorously to the application, from rightful relief. The effect of the grant of the variance on the applicant, objectors, and the municipal zone plan is the same, whether the variance is granted by an affirmative board decision or by operation of the statute. Consequently, we find no merit in the Farias' contention that a statutory grant may not be appealed to the governing body.

The statute mandates publication of the decision, *N.J.S.A.* 40:55D–10i, and an appeal must be taken within ten days of the date of publication. *N.J.S.A.* 40:55D–17a. Unless an ordinance provides for publication by a municipality, *N.J.S.A.* 40:55D–10i, the applicant bears the responsibility to arrange for publication. Although *N.J.S.A.* 40:55D–17a sets no express time limits for an appeal in the absence of publication, we believe we come closer to effectuating the legislative intent by finding that interested parties in such circumstances have a reasonable time to appeal. Otherwise, objectors who think they have defeated an application may be deprived of their victory through the inadvertent inaction of a board, whether through the failure of a board to render a written decision or through a lack of publication of notice of the statutory grant.

As previously noted, both the present statute and the 1984 amendments authorize the governing body to reverse, remand, or affirm the final decision of the board. *N.J.S.A.* 40:55D–17d. The 1984 amendment to *N.J.S.A.* 40:55D–17d, however, further provides that the governing body's review "shall be on the

record before the board," a provision that also appears in *N.J.S.A.* 40:55D–17a in both its present and amended forms. Although the Council allowed some citizens to speak at its hearing, it reviewed the matter on the record and concluded that the Farias had not established their right to relief. The trial court agreed, 180 *N.J.Super.* at 259, as do we.

■ Because the trial court concluded that no standard of review could support a grant of the variance, it did not determine whether a presumption of correctness attaches to a statutory grant. 180 *N.J.Super.* at 259. Although we agree with the trial court's assessment of the record, we conclude further that no such presumption should attach. *Cf. Snyder-Westerlind v. Mayor & Council of Atlantic-Highlands,* 134 *N.J.Super.* 459, 461 (App.Div.1975) (under prior law, no presumption of reasonableness attached to statutory denial resulting from inaction). The soundness of that conclusion is proven in this case. Here, the Board voted unanimously to deny the application and through the failure to adopt a written resolution converted that denial into a grant. In future cases, if an interested party appeals an automatic grant, the applicant will bear the burden before the governing body of proving that he is entitled to the requested relief.

### III

If this matter were to be decided under the 1984 amendment, the Farias would not be entitled to an automatic grant of the variance application, but would merely seek a court order directing the preparation of a written decision. Our review of the record, however, persuades us that such a remand to the Board would be unnecessary.

The Board was entirely justified in orally denying the application as was the governing body in revoking the statutory grant and the building permit. If the matter were considered under the 1984 amendment, the Farias never could have received a favorable decision from either municipal agency. In short, the record does not establish the special reasons or the negative

criteria necessary for a use ("d") variance or the hardship requirements necessary for a bulk ("c") variance.

■ Nonetheless, because the matter arises under the present version of the MLUL, we treat the Board inaction as resulting in a favorable decision for the Farias granting their request for a variance. By failing to publish notice of that grant, however, the Farias deprived themselves of the protection afforded a board decision under *N.J.S.A.* 40:55D–17a, which requires an appeal to be taken within ten days of the date of publication. Furthermore, we agree with the trial court's determination that the objectors appealed with reasonable dispatch. The record amply supports the trial court's findings that:

It is plain that the neighbors responded as soon as they were aware the Farias were doing what the board of adjustment had ruled they could not do. If their actions were initially unfocussed, so were those of the township officials and the Farias. Within two weeks of the start of construction the Farias knew the neighbors were intently trying to get the township to stop them. That construction progressed so far in such a short time was due to an initial burst of building activity not reasonably to be anticipated from people from whom not a peep had been heard for almost ten months. [180 *N.J.Super.* at 258.]

In sum, we find that the appeal was timely and that the resolution of the governing body is supported by the record.

■ Finally, the Farias urge that they relied on the issuance of a valid building permit in proceeding with the construction and that the municipality is equitably estopped from ordering the removal of the existing structure. A prerequisite of equitable estoppel, however, is the good faith reliance by one party on conduct of another to the detriment of the relying party. *See Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 *N.J.* 334, 339 (1979).

■ The Farias' conduct, however, does not so much bespeak good faith reliance as it reveals a "hasty effort to attempt to acquire an unassailable position to which [they] equitably should not be entitled." *Donadio v. Cunningham*, 58 *N.J.* 309, 323 (1971). They knew that their neighbors objected to the proposal and that the Board had orally disapproved their application. Consequently, they reasonably could have expected

further opposition to the construction. They chose to rely on the advice of counsel that the Board's failure to reduce its decision to writing converted its oral denial into a statutory grant. Although that advice was correct as far as it went, the Farias' failure to publish a notice of approval left the variance subject to appeal for a reasonable time. In relying on their attorney's opinion while the underlying variance was still appealable, they took their chances. They should not now be heard to complain.

To summarize, under the version of the MLUL that is in effect until July 1, 1984, the failure of the Board to reduce to writing the oral denial leads to a grant of the variances. By failing to publish the notice of the statutory grant, the Farias left the variances vulnerable to an appeal within a reasonable time period. Thus viewed, the appeal to the governing body was timely, and the governing body properly revoked the permit, rescinded the variances, and ordered the removal of the partially completed structure.

As modified, the judgment of the Appellate Division is affirmed.

For affirmance as modified—Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.