CITY OF SOUTH AMBOY, PLAINTIFF-RESPONDENT, v. ROBERT
J. GASSAWAY, T/A GASSAWAY ENTERPRISES,
DEFENDANT-APPELLANT.

Argued September 9, 1985—Decided November 25, 1985.

*John DeNoia* argued the cause for appellant (*Adams, DeNoia, Cassese & Papp,* attorneys).

*Bernard H. Shihar* argued the cause for respondent (*Convery, Convery & Shihar*, attorneys; *James B. Convery*, on the brief).

*David Joseph Frizell* submitted briefs on behalf of *amicus curiae* Frizell & Pozycki, Esqs. (*Frizell & Pozycki*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

We granted certification, 99 *N.J.* 232 (1984), to determine when an application for a zoning variance is "complete" for purposes of the 120-day automatic approval provision of *N.J. S.A.* 40:55D-73. In an unreported decision, the Chancery Division ruled that the application was complete upon filing. The Appellate Division reversed, 195 *N.J.Super.* 239 (1984), ruling that both payment of the filing fee and proof of service were essential for an application to be deemed complete. Although we find that filing of proof of service is not necessary for the completion of an application, we agree with the Appellate Division that a municipality may require payment of the filing fee before deeming an application complete. Thus, we affirm the judgment of the Appellate Division.

I

For seven years before the events that gave rise to this litigation, Robert J. Gassaway, t/a Gassaway Enterprises (Gassaway), leased premises at 228 Catherine Street, South Amboy. Gassaway conducted a furniture refinishing and automobile restoration business in a single-story garage on the premises, which were located in a residential zone. In 1981, when the City of South Amboy informed Gassaway that his use violated the zoning ordinance, he obtained from the secretary for the Board of Adjustment (Board) an application for a variance together with the Board's written instructions.

On October 27, 1981, Gassaway filed the application and a supporting plat plan with the Board. On approximately the

same date, his attorney called the Board secretary and learned that the matter would be heard at the December 9, 1981, meeting. The Board planning consultant reviewed the application, and in a letter of November 3, 1981, raised a number of questions about the application. The letter concluded that no justification existed for permitting a business use in the residential zone. The minutes of the November 12, 1981, meeting reflect that the Board did not act on the application because "all the material necessary to hear the case was not brought before the board." Thereafter, on November 17, Gassaway sent notices to affected property owners, and on November 30, 1981, he filed an affidavit of service.

At the beginning of the hearing on December 9, 1981, the Board advised Gassaway that he had not paid the filing fee. Gassaway's attorney, who had been under the impression that a check had been submitted with the application, paid the $85 fee in cash. At the conclusion of the hearing, the Board reserved decision.

At its next meeting, January 13, 1982, the Board voted to deny the application. Although the Board did not adopt a written resolution that evening, it published its decision in a local newspaper on January 16 and 23, 1982. It was not until March 10, 1982, that the Board adopted a written resolution memorializing the denial of the variance.

Gassaway did not appeal the denial to the governing body, *N.J.S.A.* 40:55D–17, or seek judicial review. Nonetheless, he continued to use the premises for his business. Consequently, the building inspector filed a complaint against Gassaway in the South Amboy Municipal Court charging him with violating the zoning ordinance. Gassaway was found guilty and fined $350. He appealed the conviction to the Superior Court and continued to use the premises for his business. As a result, South Amboy instituted the present action in the Chancery Division seeking a permanent injunction against the operation of the business.

Gassaway's basic contention throughout the judicial proceedings has been that he obtained an automatic grant of his requested variance because of the failure of the Board to adopt a written resolution of denial within 120 days of the date of his submission of a complete application. Critical to that assertion is the definition of a "complete application." *N.J.S.A.* 40:55D–3, which was in effect at the time of Gassaway's submission and the Board action, provided:

'Complete application' means an application form completed as specified by ordinance and the rules and regulations of the municipal agency, and all accompanying documents required by ordinance for approval of the application for development, including where applicable, but not limited to, a site plan or subdivision plat; provided that the municipal agency may require such additional information not specified in the ordinance, or any revisions in the accompanying documents, as are reasonably necessary to make an informed decision as to whether the requirements necessary for approval of the application for development have been met. The application shall not be deemed incomplete for lack of any such additional information or any revisions in the accompanying documents so required by the municipal agency. An application shall be certified as complete immediately upon the meeting of all requirements specified in the ordinance and in the rules and regulations of the municipal agency, and shall be deemed complete as of the day it is so certified by the administrative officer for purposes of the commencement of the time period for action by the municipal agency.

Notwithstanding the provisions of the statute, the South Amboy ordinance did not specify the requirements of an application or describe the necessary accompanying documents. The ordinance neither designated the administrative official who was to certify applications as to completeness nor provided for notification to an applicant that his application was incomplete. It provided, however, that the Board should adopt rules and regulations, and directed applicants to obtain necessary forms from the Board's secretary. Furthermore, the ordinance directed the secretary to "inform the applicant of the steps to be taken to initiate proceedings and the regular meeting dates of the Board." As required by *N.J.S.A.* 40:55D–8, the ordinance directed that "the developer shall at the time of filing the submission pay a fee," which for a use variance in a residential zone was $85.

Although the Board did not adopt rules and regulations listing the requirements of a complete application, its written instructions required the submission of a completed application form and a supporting plat plan. Consistent with *N.J.S.A.* 40:55D-12, the instructions directed service of notice of the application on property owners within 200 feet and filing of proof of service. The instructions advised further that a legal notice was to be published in a local newspaper at least 10 days before the hearing and that the application must be returned to the secretary of the Board at least 14 days before the hearing. Additionally, the instructions requested the applicant to communicate with the Board secretary before serving the notices or advertising the date of the hearing "to be sure there is an opening on the agenda." The last requirement was that a fee must be paid before "[a] hearing will be held."

The trial court found that the application was complete on November 3, 1981, when the planning consultant wrote to the Board, notwithstanding the fact that Gassaway had not paid the filing fee or served notices upon affected property owners by that date. Specifically, the court stated:

> Assuming that such a standard application package as South Amboy uses substitutes for board regulations, defendant's application was in fact complete, at the latest, by November 3, 1981. The form itself was fully filled out and submitted by that date and the required plat plan accompanied it. The Board required nothing else to put the application on the hearing agenda. Publication and service of hearing notices, and submission of proofs thereof have to await assignment by the Board of a hearing date. For that reason, the Board did not and really could not treat the absence of proof of publication and service of notices as an insufficiency in the application. In addition, the Board's instructions do not require the filing fee to accompany the application. They merely require payment at some time before hearing. Apparently without any fuss, defendant was permitted to pay at the opening of his hearing. No one raised the question of completeness until after this suit was started.

Accordingly, the Chancery Division entered judgment dismissing the City's complaint and reversing the Municipal Court conviction.

The Appellate Division reversed and remanded the matter to the Chancery Division. 195 *N.J.Super.* 239 (1984). The court wrote:

> It is clear that the Board would not entertain defendant's application for a variance until all of its requirements were met, including payment of the filing fee. The filing fee was not paid until December 9, 1981, the date on which the Board held its first hearing on the application. [195 *N.J.Super.* at 243.]

The Appellate Division also rejected the trial court's finding that notice to neighboring property owners was not necessary for an application to be deemed complete. *Id.* at 243–44. Thus, the Appellate Division rejected the trial court's finding that the application was complete on November 3, 1981, and ruled that the application was incomplete until Gassaway filed his proof of service on November 30 and paid the filing fee on December 9, 1981.

## II

Generally speaking, one of the purposes of the Municipal Land Use Law (MLUL), which became effective on August 4, 1976, is to simplify and expedite land use applications. One way MLUL achieves its purpose is by converting the failure of a board of adjustment to make a timely decision from an automatic denial, which was the result under prior law, *see N.J.S.A.* 40:55–39.1, *L.* 1969, *c.* 293, to an automatic grant. *N.J.S.A.* 40:55D–73b. By transforming an automatic denial to a grant, the Legislature hoped to stimulate boards into prompt consideration of applications. *See Lizak v. Faria,* 96 *N.J.* 482, 492 (1984).

In this case, we focus on *N.J.S.A.* 40:55D–73, which requires a board to decide a matter within 120 days of submission of a complete application. Specifically, the statute states:

> a. The board of adjustment shall render a decision not later than 120 days after the date (1) an appeal is taken from the decision of an administrative officer or (2) the submission of a complete application for development to the board of adjustment pursuant to section 59b of the act.
>
> b. Failure of the board to render a decision within such 120-day period or within such further time as may be consented to by the applicant shall constitute a decision favorable to the applicant.

Gassaway contends that the application was complete on submission and that the 120-day period expired on March 3, 1982. By contrast, South Amboy asserts that the application was

incomplete until payment of the filing fee on December 9, 1981, and that the 120-day period ran until April 9, 1982. Thus, the critical question becomes when the application was complete.

As previously indicated, the 1980 amendments define a "complete application" as "an application form completed as specified by ordinance and the rules and regulations of the municipal agency * * *." *N.J.S.A.* 40:55D–3. Unfortunately, the South Amboy ordinance did not specify the terms of the application form, and the Board had not adopted rules and regulations specifying such terms. Although the ordinance did not comply strictly with the statutory mandate, it provided that an applicant seeking a variance should pay a fee at the time of filing the application. Furthermore, the Board's instructions advised an applicant that the case would not be heard without payment of the fee. Payment is under the exclusive control of the applicant, and an applicant is not exposed to the risk of delay by the requirement that he make payment before his application is deemed complete. Therefore, the requirement of payment of the filing fee as a condition of a complete application is consistent with the purpose of MLUL.

The requirement of notification to affected property owners and filing of proof of service, however, rests on a different footing. It is the municipal agency, not the applicant, that controls the setting of the hearing date. By not setting a hearing date or by setting one in the distant future, a municipality could delay an applicant and frustrate the purpose of the statute. Consequently, we disagree with the Appellate Division, which concluded that filing of proof of service was essential for an application to be deemed complete.

Under MLUL, furthermore, a municipal agency is under an implicit obligation to set a date within a reasonable time so that the applicant may notify affected property owners and proceed to a hearing. In the present case, the Board fulfilled that obligation. The application was filed on October 27, at which

time the applicant was advised that the matter would be heard, as it was, on December 9, 1981.

We recognize that by not making timely service, an applicant could postpone a hearing and thereby deprive a board of the full 120 days for making a determination. When an applicant delays in filing proof of service, however, an agency can protect itself by requesting an appropriate extension of time. Proof of service, moreover, is a jurisdictional requirement, and, if necessary, an agency may dismiss an application for failure to serve affected property owners. To conclude, we hold that Gassaway's application was not complete until December 9, 1981, when he paid the filing fee. By adopting a written resolution on March 10, 1982, the Board acted well within the 120-day period allotted for a decision.

We have determined this matter under the 1980 amendments, which were in effect when the matter was presented to the Board, not under the 1984 amendments, which took effect during the pendency of the appeal. The Board, the lower courts, and the parties also considered the 1980 amendments as the appropriate version. That approach is consistent with the proposition that in the absence of an expression of legislative intent to the contrary, courts will give a statute prospective application. *Kruvant v. Mayor Cedar Grove*, 82 *N.J.* 435, 440 (1980). Deciding the matter under the amendments in effect during the pendency of the application, moreover, comports with the expectations of the parties and with common sense. *See Gibbons v. Gibbons*, 86 *N.J.* 515, 523 (1981). It would not be sensible to expect an applicant or a municipal agency to proceed in accordance with procedural requirements that were not in existence when the application was pending.

Even if we were to consider this matter under the 1984 amendments, which changed the requirements for an application to be deemed complete, Gassaway would fare no better.

*Compare N.J.S.A.* 40:55D-3, repealed *L.* 1984, *c.* 20, § 1, *with N.J.S.A.* 40:55D-10.3 (1985 Supp.).

*N.J.S.A.* 40:55D-10.3 provides in relevant part:

An application for development shall be complete for purposes of commencing the applicable time period for action by a municipal agency, when so certified by the municipal agency or its authorized committee or designee. In the event that the agency, committee or designee does not certify the application to be complete within 45 days of the date of its submission, the application shall be deemed complete upon the expiration of the 45-day period for purposes of commencing the applicable time period, unless: a. the application lacks information indicated on a checklist adopted by ordinance and provided to the applicant, and b. the municipal agency or its authorized committee or designee has notified the applicant, in writing, of the deficiencies in the application within 45 days of submission of the application.

Under the statute, an application is deemed complete 45 days after its submission if the agency fails to certify it as complete or to advise the applicant of deficiencies in the application. The 1984 amendment contemplates that a municipality will set the requirements for a complete application by ordinance, not by agency rule or regulation. Consistent with the preceding portion of this opinion, a municipality may include on its checklist the payment of the filing fee, but not proof of service.

In the absence of notification by the Board of deficiencies, Gassaway's application would have been deemed complete on December 11, 1981, 45 days after submission on October 27, 1981. As previously indicated, the Board voted to deny the application on January 13, 1982, and adopted a written resolution to that effect on March 10, 1982, well within 120 days of December 11, 1981. Hence, even if we were to consider this matter under the 1984 amendment, our decision would be the same.

The judgment of the Appellate Division is affirmed.

*For modification and affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.