257 N.J. Super. 347 (1992)
608 A.2d 451
BERNARD ARONOWITZ, P.E., GERTRUDE LEVINE, SOL LEVINE AND EDWIN SALZMAN, PLAINTIFFS,
v.
PLANNING BOARD OF THE TOWNSHIP OF LAKEWOOD AND AIRPORT ASSOCIATES, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided April 3, 1992.
*349 H. Steven Berkowitz for plaintiffs (Franklin & Berkowitz, attorneys).
Craig L. Wellerson for defendant Planning Board of Township of Lakewood (Dasti, Murphy & Wellerson, attorneys).
John R. Halleran for defendant Airport Associates (Giordano, Halleran & Ciesla, attorneys).
SERPENTELLI, A.J.S.C.
In this action in Lieu of Prerogative Writs, plaintiffs seek to overturn several approvals granted by the Lakewood Township Planning Board [hereinafter board] for the construction of a cogeneration facility. On June 18, 1991, the board gave the defendant, Airport Associates [hereinafter Airport]: (1) a one year extension of the statutory protective period under N.J.S.A. *350 40:55D-52, (2) a one year extension of the site plan approval under Section 18-8.7 of Chapter 18 of the Lakewood Township Code, (3) a declaration that both the statutory protective period and the period provided in the approval validity section of the township code were tolled pursuant to N.J.S.A. 40:55D-21 for a period of one year and (4) an amended site plan approval for various changes to the original site plan approval which were required by virtue of other regulatory agency action. That relief was memorialized by formal resolutions adopted on July 16, 1991.
The plaintiffs filed this action on August 26, 1991. Following pretrial and cross-motions for summary judgment, the parties entered into a consent order which set aside the original approvals and remanded the case to the board for a de novo hearing.
At a meeting held on November 19, 1991, the board scheduled a special meeting for December 9, 1991 to reconsider Airport's application. At the conclusion of the December 9 meeting, the board again granted the same approvals mentioned earlier with the exception of the request for tolling under N.J.S.A. 40:55D-21 which Airport chose not to pursue on remand. On December 17, 1991, the board adopted memorializing resolutions.
On December 24, 1991, the court granted the plaintiffs' application to reopen the case. The plaintiffs now renew their attack on the extension decision and, in addition, assert both a violation of the Open Public Meetings Act regarding the December 9, 1991 meeting and a conflict of interest which allegedly tainted the remand hearings. The plaintiffs have not challenged the resolution approving the amended site plan. The court will address the outstanding issues in reverse order.

I. ALLEGED CONFLICT OF INTEREST
As noted, on November 19, 1991, the board met to consider Airport's request to schedule a special meeting for December 9, 1991 and to hire a new attorney to represent the board at the special meeting. The plaintiffs allege that board members *351 Mayor Richard Work and Committeeman Jose Alonso improperly participated in the November 19 meeting.
Mayor Work is an employee of Jersey Central Power & Light Company which intends to purchase power from the cogeneration facility. Plaintiffs contend that the Mayor had been advised by the township attorney that the Mayor's participation in any proceeding before the governing body or the planning board could create an appearance of a conflict of interest because of his position with Jersey Central Power & Light Company. In addition, the plaintiffs assert that Mayor Work and Committeeman Alonso, as township committee members, signed an agreement with Airport in settlement of a prior lawsuit which, among other things, required the township committee not to oppose Airport's effort in obtaining any needed local approvals. The plaintiffs concede that Mayor Work and Committeeman Alonso recused themselves from the December 9 hearing, but argue that their participation in the November 19 meeting, which scheduled the December 9 session and led to the hiring of the special counsel, tainted the subsequent proceedings.
Plaintiffs' argument is attenuated at best. In the first place, the transcript of the November 19 hearing, for the most part, does not identify which board member was speaking. However, to the extent that the court can presume that certain comments were made by either Mayor Work or Committeeman Alonso, it appears that the statements were entirely informational and had no significant impact on the outcome of the meeting. In fact, the only action taken at the meeting was an agreement to hold another meeting and to authorize the chair of the board, together with one or two other members, to select the special attorney for the December 9 meeting. The board agreed not to hire the attorney who represented it in the previous proceeding before this court. However, no vote was taken concerning any specific replacement.
*352 Whether the participation of Mayor Work or Committeeman Alonso in the November 19 meeting creates an appearance of impropriety which invalidates that and ensuing meetings depends on an analysis of the circumstances surrounding their involvement. In re Professional Ethics Opinion 452, 87 N.J. 45, 50, 432 A.2d 829 (1981). In this case, it is not enough to say that their presence alone creates a suspicion which equates to an impermissible taint. The appearance of impropriety "must be something more than a fanciful possibility." Higgins v. Advisory Comm. on Professional Ethics, 73 N.J. 123, 129, 373 A.2d 372 (1977). Its existence and effect cannot be decided in a vacuum. In re Opinion 415, 81 N.J. 318, 325, 407 A.2d 1197 (1979). There must be some reasonable basis to reach the conclusion that the outcome of the hearings may have been compromised by their conduct. Id.
On the facts before the court, the most that can be said is that the two members of the governing body, in some way, participated in the discussion which established the special meeting date. Certainly, prudence dictated that they should not have participated in or been present at the meeting once the quorum had been established. However, neither of them voted with regard to the meeting date. Even if they did, it is hard to see how that could have tarnished the following sessions. The plaintiffs do not claim that the date chosen gave Airport any special advantage. Moreover, the record does not reveal anything that leads the court to conclude that either of the committee members took part in the selection of special counsel to represent the board at the December 9 meeting. Under those circumstances, the court cannot find an appearance of impropriety which reasonably can be said to have tainted the remand hearings.

II. OPEN PUBLIC MEETINGS ACT
Next, the plaintiffs argue that the board violated the Open Public Meetings Act, specifically N.J.S.A. 10:4-9(a), by failing *353 to give adequate notice as defined by N.J.S.A. 10:4-8(d). In summary, N.J.S.A. 10:4-8(d) requires that a written advance notice of at least 48 hours must: (1) be submitted to two newspapers as described by the statute, (2) be prominently posted in at least one public place reserved for such notices and (3) be filed with the clerk of the municipality. The plaintiffs allege, and the defendants do not dispute, that Airport failed to post or file the notice of the December 9 meeting in the manner required by the Act.
Airport seeks to justify the failure to conform with the statute by invoking the so-called "last proviso clause" of N.J.S.A. 10:4-15(a). That section directs, in part, that:
[A]ny action for which advance published notice of at least 48 hours is provided as required by law shall not be voidable solely for failure to conform with any notice required in this act.
Airport asserts that the purpose of this statutory exception was to avoid duplication of notice when the notice of a meeting is governed by another statute which has its own procedure requiring actual advance published notice. Airport contends that its failure to comply with the Open Public Meetings Act is cured by its compliance with the publication requirements of the Municipal Land Use Law under N.J.S.A. 40:55D-12. That section requires that notice be published in the official newspaper of the municipality, if there be one, or in a newspaper of general circulation in the municipality.
It is true that the purpose of the "last proviso clause" is to prevent the needless invalidation of public meetings when another statute requires notice comparable to that required under the Open Public Meetings Act. In re Application of County of Monmouth, 156 N.J. Super. 188, 193, 383 A.2d 740 (App.Div. 1978). However, Airport has not cited the court to any case which holds that the notice provisions of the Municipal Land Use Law can be utilized to satisfy the posting and filing requirements of the Open Public Meetings Act by utilizing the "last proviso clause." The court also has not found any authority. *354 A cogent argument could be formulated on either side of this unresolved question.
On the one hand, it could be said that Airport's reading of the statute would defeat the purpose of the Open Public Meetings Act which provides alternate methods by which the public can receive notice of impending meetings. There are, after all, people who do not read the newspaper or who may seek meeting information in other ways. The Open Public Meetings Act protects those individuals by providing them with another means of obtaining notice of the meeting pursuant to the procedures set forth in N.J.S.A. 10:4-8(d), that is, by checking the bulletin board or visiting the clerk's office. The Municipal Land Use Law does not contain the same alternatives.
The court is enjoined to avoid any interpretation of the Act which would subvert the right of public access to meetings, undermine public confidence in bodies which govern it, or in any way undo the noble purposes of the "Sunshine Law." N.J.S.A. 10:4-21; Polillo v. Deane, 74 N.J. 562, 578, 379 A.2d 211 (1977). In Rice v. Union County Regional High School Bd. of Educ., 155 N.J. Super. 64, 70, 382 A.2d 386 (App.Div. 1977), the Appellate Division described the statute as being:
in keeping with strong present-day policies `favoring public involvement in almost every aspect of government.' (citing Polillo, 74 N.J. at 569 [379 A.2d 211]). This legislation is to be liberally construed, N.J.S.A. 10:4-21, and `strict adherence to the letter of the law is required in considering whether a violation of the act has occurred.' (citation omitted).
It necessarily follows that any exception from the full public disclosure mandated by the statute is to be strictly construed. (citation omitted).
Cf. Jenkins v. Newark Bd. of Educ., 166 N.J. Super. 357, 399 A.2d 1034 (Law Div. 1979), aff'd, 166 N.J. Super. 300, 399 A.2d 1005 (App.Div. 1979).
On the other hand, it must be recognized that the only notice required under the Open Public Meetings Act is the submission of the meeting notice to two newspapers. It has been held that the mandate of submission under the Act does not require actual publication. Bernards Tp. v. Dept. of Com. Affairs, 233 N.J. Super. 1, 26, 558 A.2d 1 (App.Div. 1989); Worts v. *355 Upper Tp., 176 N.J. Super. 78, 81, 422 A.2d 112 (Chan.Div. 1980). By contrast, the "last proviso clause" requires actual publication, as opposed to submission of the notice. Therefore, the purpose of the "last proviso clause" of ensuring that the public receives adequate notice while avoiding duplication is arguably enhanced by actual publication under some other law, such as the Municipal Land Use Law, even if only in one newspaper, as compared to merely potential publication in two newspapers under the Open Public Meetings Act.
Furthermore, the language of the "last proviso clause" itself could also be read to support that interpretation. As noted earlier, the section expressly provides that as long as there has been publication under another law, an action shall not be voidable for "failure to conform with any notice" required under the Open Public Meetings Act. N.J.S.A. 10:4-15(a). (emphasis added). The term "any" could include notice by posting and filing as well as submission to the newspaper.
Additionally, as stated above, the Open Public Meetings Act defines "adequate notice" in N.J.S.A. 10:4-8(d) as requiring that an advance notice of at least 48 hours be submitted to at least two newspapers, that it be prominently posted and that it be filed with the clerk of the municipality. The Legislature is presumed to have had in mind the definition of "adequate notice" when it adopted the "last proviso clause." Therefore, the reference in the "last proviso clause" to "any other notice" could be read to mean that the Legislature intended that actual publication under another law is deemed sufficient to apprise the public of the action to be taken and constitutes "adequate notice."
Finally, in In re Application of County of Monmouth, 156 N.J. Super. at 193, 383 A.2d 740, the court observed that the "last proviso clause" was accompanied by the following legislative statement in the second reprint of the bill:
Section 10 also provides that an action such as adoption of an ordinance where there has been advance published notice of at least 48 hours shall not be voidable solely for failure to conform with notice requirements of this act.
*356 The statement suggests that the Legislature contemplated that a single publication under the law governing notice of hearings concerning ordinance adoption would cure failure to comply with the supplemental notice requirements of posting and filing under the Open Public Meetings Act. The statement excuses compliance "with notice provisions of the (Open Public Meetings) Act", which could be read to include all notice required under the Act including posting and filing.
In truth, the legislative intent is debatable. It implicates an important policy issue which the court need not reach since this aspect of the case can be decided on other grounds. However, it seems to be a question that the Legislature could quickly and expeditiously resolve.
The board and Airport pose two alternative arguments to sustain the validity of the board's decision. First, the two defendants seek to pardon conformance on the ground that the deviation, if there be one, can be overlooked. The board argues that the technical violation of the Open Public Meetings Act was "de minimis." Airport contends that it was inconsequential and that there was "substantial compliance" with the Act sufficient enough to validate the board's action. The board actually published notice of the meeting in two newspapers. Airport also published a notice as required by the Municipal Land Use Law. Pursuant to that law, all property owners within two hundred feet of the property received a certified notice of the meeting. Furthermore, the project had obtained substantial notoriety as a result of prior litigation and many heated municipal meetings. Naturally, it attracted wide media coverage. The parties agree that the December 9 meeting was "standing room only", attended by well over 200 people.
Indeed, the board complied with the Open Public Meetings Act in all regards except posting and filing. In reality, these deficiencies are the least likely method to give notice. The court wonders how frequently this oversight occurs. It was discovered in this case only because plaintiffs' counsel visited *357 the municipal offices on the meeting day specifically for the purpose of determining whether there had been full compliance.
However, our Supreme Court has expressly rejected the argument that substantial compliance can satisfy the specific mandates of the Open Public Meetings Act. Instead, as indicated above, the Court has required complete adherence to the strictures of that law. Polillo v. Deane, 74 N.J. at 578, 379 A.2d 211. The remedy is not to measure the degree of compliance but rather to act again to correct any deficiency. The Legislature, by providing for a de novo hearing, intended that a public body must consider its action anew in full compliance with the Act in order to remedy an otherwise voidable decision. Houman v. Mayor & Council of Pompton Lakes, 155 N.J. Super. 129, 164, 382 A.2d 413 (Law Div. 1977).
That brings the court to the other ground upon which the board and Airport seek to uphold the validity of the December 9 meeting. They both contend that any defect in the December 9 meeting was cured at the December 17 hearing.
N.J.S.A. 10:4-15(a) provides, in part:
Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ in the Superior Court ... provided, however, that a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act and other applicable law regarding any action which may otherwise be voidable pursuant to this section; ....
It is uncontested that the board renotified the public that action would be taken on Airport's application at a meeting to be held on December 17. It is conceded that the board arranged for actual publication of a notice of that meeting in two official newspapers more than 48 hours prior to the meeting. The board also claims that on December 13, it posted a notice of the hearing on a bulletin board in the Lakewood Township municipal building and delivered a copy to the township clerk. The notice set forth the date, time, place and reason for the hearing. It specifically informed any interested member of the public who failed to receive notification of the December 9 *358 meeting and had an interest in the application, that they would be heard by the board on December 17. The notice also advised members of the public that a tape recording of the December 9 session was available for review during the board's regular business hours.
At the commencement of the December 17 hearing, the board secretary detailed compliance with the Open Public Meetings Act. Furthermore, counsel for the board recited actual publication of the notice in two newspapers in general circulation in Lakewood Township as well as compliance with the posting and filing requirements. He instructed the board to reopen the meeting to anyone who had not received notice of the December 9 meeting and who wished to be heard. At that point, one member of the public testified at some length. Upon the conclusion of his testimony, the chair inquired whether anyone else in the audience wanted to speak. The transcript demonstrates that there was no response. The chair then closed the public portion of the meeting and the board adopted memorializing resolutions.
The plaintiffs insist that the only way to cure the board's failure to comply with the Open Public Meetings Act was to disregard the entire December 9 meeting and start all over again. They would have the board members erase from their minds any testimony taken at that meeting, disregard the many exhibits produced and, perhaps most significantly, ignore the testimony of the members of the public attending that evening. The law does not require such a harsh result.
Unquestionably, the purpose of the Open Public Meetings Act is to give full access to all public meetings of governmental bodies and to protect against secrecy in public affairs. N.J.S.A. 10:4-7; Crifasi v. Governing Body of Oakland, 156 N.J. Super. 182, 186-87, 383 A.2d 736 (App.Div. 1978). However, by adopting N.J.S.A. 10:4-15(a) and allowing for remedial action, the Legislature provided a means to balance the rights of an informed citizenry against the need of government to *359 function efficiently. Houman v. Borough of Pompton Lakes, 155 N.J. Super. at 162-63, 382 A.2d 413. Polillo established the standards by which the adequacy of the curative effort should be gauged.
These remedial statutory sections contemplate maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business. Consistent with the breadth and elasticity of relief provided in the legislative scheme, it is entirely proper to consider the nature, quality and effect of the noncompliance of the particular offending governmental body in fashioning the corrective measures which must be taken to conform with the statute. Polillo v. Deane, 74 N.J. at 579, 379 A.2d 211.
In this context, Polillo found that the "substantial compliance" argument carried some weight in determining the appropriate remedy. Id. The Court noted that most of the meetings of the body which had violated the Act in the case before it, nonetheless involved wide participation by the public. It also found it unnecessary "to invalidate and repudiate all other public meetings, particularly those hearings at which testimony and evidence were received." Id. at 580, 379 A.2d 211. The same can be said about the case before this court.
As outlined above, the December 9 meeting was preceded by broad public announcements which resulted in overflow attendance. It is hard to believe that the failure to post and file the notice appreciably diminished the size of the audience. Furthermore, much evidence was received from both Airport and numerous objectors. To have thrown all of that away could have been, in reality, counterproductive to the purposes of the Open Public Meetings Act. A decision to start afresh at a subsequent meeting might well have reduced, rather than enhanced, public participation.
Any failure to abide by the dictates of the Open Public Meetings Act cannot be overlooked. The statute's overriding objective of ensuring "government of the people" is too vital. Polillo v. Deane, 74 N.J. at 570-71, 379 A.2d 211. Yet, in weighing the nature, quality and effect of the noncompliance in this case against the potential disruption of the orderly process *360 of government, as well as the rights of all who attended the December 9 meeting, the court concludes that the corrective steps which the board took before and at its December 17 meeting satisfied the intent and purpose of the Open Public Meetings Act and cured any defect in the December 9 proceedings.

III. VALIDITY OF EXTENSION
Finally, the plaintiffs argue that the extension granted to Airport is invalid for two reasons. First, it is alleged that Section 18-8.7 of the Lakewood Township Code required the board to find that the applicant failed to obtain a building permit and commence construction pursuant to the site plan within two years of approval and that, as a result, the site plan approval became void. That section provides:
18-8.7 Building Permits. Applicants for proposed construction shall, within two years after the date of final site plan approval, obtain a building permit and commence construction pursuant to the site plan.
In the event the building permit is not obtained and construction not commenced within the time above set forth, the site plan approval shall become void unless otherwise extended by the planning board for good cause shown pursuant to N.J.S.A. 40:55D-1, et seq.
In the event an extension is not obtained the site plan approval shall terminate and no building permit shall be issued or construction commenced until a new site plan approval is given, and the new site plan approval shall also be subject to the above regulations.
Although Airport applied for an extension prior to the expiration of the two year period, plaintiffs argue that Airport had not properly obtained its approval because it delayed the hearing date of that application until after the two year period had expired. Thus, in the plaintiffs' view, the extension granted to Airport on June 18 is invalid by reading the ordinance to require that either construction be commenced or an extension be obtained within the two year approval period.
Second, the plaintiffs contend that the board was wrongfully instructed by its attorney that it had very little discretion to *361 refuse to extend the site plan approval and that it acted arbitrarily, capriciously and unreasonably in granting relief.
As to the first argument, Airport counters that the local ordinance must be read in pari materia with N.J.S.A. 40:55D-52. If not read in that manner, the ordinance could appear to conflict with and be preempted by that statute. At the time of the June 18 approvals, the statute read in pertinent part:
a. The zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to section 37 of this act, whether conditionally or otherwise, shall not be changed for a period of two years after the date of final approval; .... If the developer has followed the standards prescribed for final approval ... the planning board may extend such period of protection for extensions of one year but not to exceed three extensions.
It is well settled law that the zoning power delegated to municipalities is limited and may only be exercised in accordance with the enabling legislation. Riggs v. Long Beach Tp., 109 N.J. 601, 610, 538 A.2d 808 (1988); Lusardi v. Curtis Point Property Owners Ass'n, 86 N.J. 217, 226, 430 A.2d 881 (1981). Any local zoning ordinance exceeding the power delegated under state law is ultra vires. Hilton Acres v. Klein, 35 N.J. 570, 581, 174 A.2d 465 (1961); Magnolia Development Co., Inc. v. Coles, 10 N.J. 223, 227-28, 89 A.2d 664 (1952).
There is no specific provision in the Municipal Land Use Law which authorizes a municipality to adopt an ordinance which terminates the validity of a site plan merely because of the lapse of time. Airport has cited the court to an unpublished Appellate Division decision in JRSC Associates v. Jackson Tp. Planning Bd., decided May 29, 1991, that struck down an ordinance which provided that a variance was only valid for a two year period unless the project was completed and a certificate of occupancy issued within that time. The plaintiffs distinguish JRSC on the grounds that the ordinance involved in that case required completion of the project within two years and assert that the court indicated that if the ordinance had called for commencement of the project within two years, it "would not impermissibly vary the MLUL and would probably be *362 valid." Those are the words of the plaintiffs' attorneys and not the words of the Appellate Division. Admittedly, the decision could be read as containing dicta that might suggest the validity of such an ordinance. It should be noted that the ordinance suggested in JRSC Associates as being potentially valid does not appear to conflict with any express provision of the Municipal Land Use Law. By contrast, if the Lakewood code is to be interpreted as the plaintiffs suggest, there is an apparent conflict with N.J.S.A. 40:55D-52.
The thrust of the Lakewood ordinance, as the plaintiffs view it, is to void a site plan automatically if the board has failed to extend its validity within the two year period, even if the applicant has applied for extension prior to the expiration of that period. Therefore, the issue is not whether the ordinance requires commencement of construction within the two years, but rather whether the Municipal Land Use Law allows the board to mandate that any request for extension must be made and acted upon within the two year period. In addressing that issue, it is significant to note that, at the time of the approvals granted on December 17 the following relevant additions had been made to N.J.S.A. 40:55D-52:
c. Whenever the planning board grants an extension of final approval pursuant to subsection a. or b. of this section and final approval has expired before the date on which the extension is granted, the extension shall begin on what would otherwise be the expiration date. The developer may apply for the extension either before or after what would otherwise be the expiration date.
d. The planning board shall grant an extension of final approval for a period determined by the board but not exceeding one year from what would otherwise be the expiration date, if the developer proves to the reasonable satisfaction of the board that the developer was barred or prevented, directly or indirectly, from proceeding with the development because of delays in obtaining legally required approvals from other governmental entities and that the developer applied promptly for and diligently pursued these approvals. A developer shall apply for the extension before (1) what would otherwise be the expiration date of final approval or (2) the 91st day after the developer receives the last legally required approval from other governmental entities, whichever occurs later. An extension granted pursuant to this subsection shall not preclude the planning board from granting an extension pursuant to subsection a. or b. of this section. [Chapter 256 of the Laws of 1991]
*363 The statute, as amended, expressly permits an application for extension to be made either before or after the expiration of the statutory protective period. Furthermore, the statute mandates approval of the application for extension if the developer proves, to the reasonable satisfaction of the board, that the developer was barred or prevented, directly or indirectly, from proceeding with development because of delays in obtaining legally required approvals from other governmental entities and that the developer applied promptly for and diligently pursued those approvals.
The amendment appears to be right on point in this case. The record supports the conclusion that Airport has vigorously pursued the many agency approvals required. In fact, it is asserted that by April of 1991, all approvals had been obtained. In the court's view, the defendants can argue persuasively that since this court vacated the approvals granted on June 18 and the board reinstated them on December 17, the new law which had been adopted in the interim should govern since it was the law in effect at the time of the board's decision.
The time of decision rule is firmly grounded in our jurisprudence. It can be asserted that the amended statute should apply both to this appeal and to the board's action on December 17. Lizak v. Faria, 96 N.J. 482, 495, 476 A.2d 1189 (1984); Donadio v. Cunningham, 58 N.J. 309, 323, 277 A.2d 375 (1971); Morris v. Postma, 41 N.J. 354, 361-62, 196 A.2d 792 (1964). The Supreme Court in Kruvant v. Mayor and Council of Cedar Grove, 82 N.J. 435, 414 A.2d 9 (1980), described the doctrine as follows:
It is a well-established principle that an appellate court on direct review will apply the statute in effect at the time of its decision, at least when the legislature intended that its modification be retroactive to pending cases. The purpose of the principle is to effectuate the current policy declared by the legislative body  a policy which presumably is in the public interest. By applying the presently effective statute, a court does not undercut the legislative intent. [Id. at 440, 414 A.2d 9]
Thus, if the amendment to the Municipal Land Use Law is deemed controlling here, the Lakewood code, as the plaintiffs *364 interpret it, specifically contradicts the Municipal Land Use Law as amended and, therefore, is invalid. There is nothing in the amendment to suggest that it should not be applied to pending applications or litigation. Indeed, it seems merely to express what would have been a common sense interpretation of the statute in its prior form.
Even if the court views the action of the board to be governed by the law in effect on June 18, the date of the prior approval of the extension application, Airport could still properly receive an extension after expiration of the two year period. While the former statute is not expressly dispositive, it is evident that the law contemplates that site plan approval is an early step in the development process which frequently requires many other approvals before actual construction can commence. The land use law seeks to provide the developer with a period of repose during which plans can be finalized without concern that major modifications will be made in the general terms and conditions governing its approvals. Put another way, the statute appears to provide some "lasting qualities for site plan approvals." Bleznak v. Evesham Tp., 170 N.J. Super. 216, 219, 406 A.2d 201 (Law Div. 1979).
The Bleznak court describes the process as follows:
Any entrepreneur commencing a new venture, as here, embarks upon an uncertain journey. He cannot know whether he will succeed or fail and, if he succeeds, whether his building and other improvements will require changes in order to accommodate growth and other unforeseeable future events. If he is obliged to proceed with the knowledge that his future plans may be frustrated through zoning changes, he may well decide not to proceed at all since success will carry the seed of its own defeat. The Legislature recognized this circumstance and protected approved uses for specific periods of time as set forth in the statute. [Id. at 219, 406 A.2d 201]
The amendment to N.J.S.A. 40:55D-52 discussed above, lends credence to this interpretation. Obviously, the Legislature recognized the tortuous process of applications, multiple agency approvals and other perils that are encountered in those procedures. Our Supreme Court described it in another context as follows:

*365 If there is any class of litigant that knows of the uncertainties of litigation, it is the builders. They, more than any other group, have walked the rough, uneven, unpredictable path through planning boards, boards of adjustment, permits, approvals, conditions, lawsuits, appeals, affirmances, reversals, and in between all of these, changes in both statutory and decisional law that can turn a case upside down. [Hills Dev. Co. v. Bernards Tp., 103 N.J. 1, 55, 510 A.2d 621 (1986)]
Indeed, the amended statute goes so far as to allow an application for extension up to the ninety-first day after a developer receives the last legally required approval, even if that date is long after the expiration of the two year period, provided that a developer has proceeded reasonably, promptly and diligently in pursuit of the approvals. By doing so, it recognizes the risks and the time consuming process a developer must face, particularly in projects of the size here involved. Both versions of the statute strike a balance between accommodating the needs attendant to the development process and the right of the legislative body to change its mind. The amended statute is simply more expressive of the underlying objectives.
Therefore, I am satisfied that, to the extent that the municipal ordinance could be read as requiring approval of the extension request prior to the expiration of the two year period, it would be ultra vires even under the earlier version of N.J.S.A. 40:55D-52. However, if contrary to the plaintiffs' position, the code's intent is to recognize a right to extension under the Municipal Land Use Law which includes a right to an extension after the two year period, it is consistent with state law and authorizes the board's action in this case.
Finally, the plaintiffs contend that the board felt constrained to grant the extension requested by Airport based on the advice of the board's counsel that, in his judgment, a refusal to extend site plan review probably would not withstand judicial review. Plaintiffs insist that the decision to extend was arbitrary, capricious and unreasonable.
Plaintiffs assert that a denial would have been justified for several reasons. First, they say that Airport brought the *366 extension problem upon itself by seeking both preliminary and final site plan approval before it had other approvals, knowing that it would have to seek additional extensions. However, nothing in the Municipal Land Use Law precludes a developer from seeking both approvals simultaneously.
Second, plaintiffs charge that the board should have considered the conditions imposed by various agencies in determining whether it should have granted an extension "in light of possible environmental effects which were not before the board in previous proceedings." Of course, the hearings on December 9 and 17 provided ample opportunity for the objectors to develop this position and for the board to weigh the strength of it.
Third, the plaintiffs suggest that Airport did not have title to the property at the time of the extension and could not have acquired it because the township had refused to convey the land to the Lakewood Industrial Commission with whom Airport had a contract to purchase upon fulfillment of certain contingencies. Airport correctly responds that it never relinquished its interest in the land. In fact, it instituted litigation to compel the township to convey title to the Lakewood Industrial Commission so that the purchase could be consummated. That suit ultimately was settled by an agreement to complete the transfer as originally contemplated. In short, Airport always remained an "interested party" as defined by N.J.S.A. 40:55D-4 and, as such, had a right to continue seeking its approvals.
Fourth, plaintiffs postulate that although Airport filed its application for extension prior to the expiration of the two year period, it delayed the hearing until after the expiration of that term because Airport knew it would have been denied an extension had it been heard promptly. Nothing in the record supports this hypothesis. Furthermore, the court has already found that Airport was not required to complete the extension application within two years.
*367 Finally, plaintiffs claim that at the time of the remand, the township had adopted a new ordinance which would have required Airport to seek a variance for the height of its proposed venting stacks if the amendment applied to Airport's application. Of course, that argument begs the question, since the purpose of the land use law, as mentioned earlier, is to provide the developer with a degree of repose from changes taking place within the two year approval period and any reasonable extensions thereof. The board apparently concluded that the modification to the height requirement fell into the category of protected conditions and the plaintiffs have not challenged that conclusion.
The board adopted two resolutions granting an extension, one under the law in effect at the time of the first approvals on June 18 and another under the law in effect at the time of the December 17 approvals. Both resolutions contain persuasive reasons for granting the extension, regardless of which version of the statute is applied. The resolutions note that the applicant timely filed and diligently pursued all other development approvals required by other municipal, county, state and federal agencies without interruption. Next, the resolutions find that Airport had obtained all those approvals by April 1, 1991 and that no approval remained outstanding other than the requested extension. Finally, the board found that the applicant incurred substantial delays in the approval process which justified the granting of the extension. The record amply supports this conclusion. Indeed, the litigation alone which Airport was forced to prosecute or defend since the board's earliest site plan approval on March 21, 1989 (which was later set aside in one of the lawsuits), could well support the board's finding that Airport's efforts were substantially delayed by factors not within its control.
In any event, it certainly cannot be said that the plaintiffs have carried the burden of demonstrating that the board's decision was arbitrary, capricious or unreasonable as they must *368 in order to prevail in this aspect of their challenge. Kramer v. Board of Adjustment of Sea Girt, 45 N.J. 268, 212 A.2d 153 (1965). The presumption of validity accorded such actions is sufficient to sustain the board's decision here. Rexon v. Board of Adjustment of Haddonfield, 10 N.J. 1, 7, 89 A.2d 233 (1952). In fact, the court can go further and find that the reasons for granting the extension outweigh the objections relied upon by the plaintiffs. On the face of it, it appears that the board would have been unreasonable to deny the requested extension.
Based on the foregoing, the court sustains the board's decision in all respects.