**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1418-22

CAPE JETTY, LLC,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

CAPE MAY CITY PLANNING
BOARD,

     Defendant-Respondent/
     Cross-Appellant,

and

CITY OF CAPE MAY and
CAPE MAY CITY COUNCIL,

     Defendants-Respondents,

and

CRAIG VERSTEEG, LISA
VERSTEEG, NICHOLAS GRISANTI,
CAMILLE GRISANTI, JOSEPH
SCHLITZER, NANCY SCHLITZER,
SCOTT MASLOW, BOBBI STOKES,
JAY KLOOSTERBOER,
and BARBARA ZICCARI,

Intervenors-Respondents.

_____

Argued March 5, 2024 – Decided April 8, 2024

Before Judges Mayer, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0083-22.

Robert Baranowski argued the cause for appellant/cross respondent (Hyland Levin Shapiro LLP, attorneys; Robert Baranowski and Peter Aaron Chacanias, on the briefs).

Timothy Mooney argued the cause for respondent/ cross-appellant Cape May City Planning Board (King Barnes, LLC, attorneys; Richard Michael King, on the briefs).

Erin Thompson argued the cause for respondents City of Cape May and Cape May City Council (Birchmeier & Powell LLC, attorneys; Erin Thompson, on the brief).

John Paul Amenhauser argued the cause for intervenors/respondents (The Deweese Law Firm, PC, attorneys; John Paul Amenhauser, on the brief).

PER CURIAM

Plaintiff Cape Jetty, LLC (Cape Jetty) appeals from a November 30, 2022 order resolving the relief requested in its complaint in lieu of prerogative writs. Defendant Cape May City Planning Board (Board) cross-appeals from that same order limited to the decision to remand Cape Jetty's request for an extension of

its 2019 development approval (Extension Request) to the Board. For the reasons that follow, we affirm the November 30, 2022 order except for the portion of the order remanding the Extension Request to the Board. We remand that issue to the judge to render a decision, based upon the record presented to the Board on January 25, 2022 and the Board's February 22, 2022 resolution, whether the Board's denial of Cape Jetty's Extension Request was arbitrary, capricious, or unreasonable.

We recite the facts from transcripts of the hearings before the Board on November 9, 2021 and January 25, 2022, the Board's January 25, 2022 and February 22, 2022 memorializing resolutions, and the judge's November 30, 2022 written decision.

Cape Jetty owns property on Second Avenue near the beach in Cape May (Property). The Property is located in the C3 Hotel Motel District per the zoning ordinances adopted by defendant City of Cape May (City). The Property is adjacent to a residential neighborhood. At present, the Property consists of a thirty-three-unit motel with a swimming pool and on-site parking.

In March 2019, Cape Jetty applied to the Board to develop the Property as a fifty-six-unit hotel with sixty-six parking spaces and additional guest-

exclusive amenities (2019 Application). The 2019 Application required no variances and sought the Board's approval as of right.

In August 2019, the Board adopted a memorializing resolution approving Cape Jetty's 2019 Application (2019 Approval). Cape Jetty never obtained any building permits under the 2019 Approval.

In March 2021, Cape Jetty applied to the Board to develop the Property as a fifty-three-unit hotel with a two hundred-and-forty seat restaurant open to the public and sixty-five on-site parking spaces (2021 Application). However, one hundred and twenty-three parking spaces were required under the City's ordinance. To offset the parking deficiency, the 2021 Application proposed fifty-eight off-site parking spaces through "a valet parking service to locations offsite, but unidentified at present."

In the 2021 Application, Cape Jetty sought two variances under N.J.S.A. 40:55D-70(c)(2): a parking variance to provide fewer on-site parking spaces and a height variance to increase the building height approximately three feet above the forty-foot maximum height limit.

On a single hearing date in November 2021, the Board heard testimony regarding the 2021 Application. Cape Jetty presented testimony from the following witnesses: Manny DeMutis, a member of Cape Jetty; Stephen

Fenwick, an architect and planner; Andrew Schaeffer, an engineer and planner; and David Shropshire, a traffic engineer and planner.

Regarding the height variance, DeMutis testified the requested relief related to the building's interior provided "a better view and . . . a better feeling when you're inside the building." Fenwick explained the height variance allowed for a "comfortable height."

Schaeffer testified "the increased height of [forty-three] [feet] versus the previously approved [forty] feet . . . block[ed] more view[s] than the [2019 Approval]." However, he opined the height increase was "de minimis." Schaeffer also explained the neighboring buildings north of the Property had their southern view blocked under the 2019 Approval and other houses adjacent to the Property had their views blocked by an existing dune. Thus, Schaeffer opined "the [forty]-foot and the [forty-three]-foot[-]high structure would essentially block [the neighbors'] view to the same degree."

Further, according to Schaeffer, the additional three-foot height made "the space, both as a hotel and a restaurant, more desirable." In support of the height variance, he explained the proposed height created "a more desirable luxury hotel" and attracted a "demographic [with] more spendable money [for] the tourist aspects of the [C]ity."

A-1418-22

Regarding the parking variance, Schaeffer testified the 2021 Application included off-site valet parking. Schaeffer explained the off-site parking would "reduce the traffic associated with hotel visitors circling the neighborhood seeking on-street parking" consistent with the City's Master Plan. Schaeffer further testified the 2021 Application satisfied the City's Master Plan by "expand[ing] parking supply . . . through providing a satellite . . . parking area," "encourag[ing] the use of bicycles and walking as alternatives to automobiles," and "providing the requisite number of parking spaces." He also stated the 2021 Application "increas[ed] green space" around the hotel and enhanced the neighborhood's aesthetics by concealing cars parked on-site.

Cape Jetty's traffic expert, Shropshire, testified next. According to Shropshire, "[v]alet operations are very common . . . in shore communities." Shropshire explained off-site valet parking would work in conjunction with on-site and street parking to satisfy the required number of parking spaces for the 2021 Application.

The Board also heard testimony from its engineer, Craig Hurless. According to Hurless, the 2021 Application provided only sixty-five "legitimate . . . parking spaces" on-site. Although Cape Jetty proposed additional "stacked spaces" for on-site parking, Hurless testified the City's

ordinance did not "count stacked parking spaces" toward satisfaction of the required parking spaces. According to Hurless, the 2021 Application required one hundred and twenty-three parking spaces to comply with the City's ordinance and Cape Jetty was fifty-eight spaces short of the required minimum for parking.

The Board also heard comments from members of the public regarding the 2021 Application. One resident testified the increased height would "tremendously impact[]" the view from his home and cause "tremendous damage to [his] real estate values." Counsel for the neighboring objectors stated the increased height negatively impacted the homeowners' views and the requested variance benefitted only Cape Jetty and not the surrounding community.

Regarding the parking situation, at the time of the 2021 Application, several residents stated the streets in the vicinity of the Property were "totally parked . . . all the way down on the side streets." The residents also testified the neighborhood was "heavily congested [al]most every day, particularly during the summer and fall months" and "[t]he parking situation . . . contribute[d] to traffic congestion in the downtown as motorists frequently circle[d] blocks several times in [an] effort to find a parking space."

A-1418-22

At the conclusion of the testimony, Cape Jetty's attorney stated that if the Board denied the 2021 Application, Cape Jetty would proceed under the 2019 Approval. Based on this statement, counsel for the neighboring residents sent a November 29, 2021 letter to the Board, asserting Cape Jetty failed to obtain a building permit under the 2019 Approval and, therefore, that approval expired under Cape May City Code § 417-6(G).[1]

Cape Jetty responded the 2019 Approval remained valid. However, it simultaneously requested the Board grant a one-year extension of the 2019 Approval.

On January 25, 2022, the Board adopted a memorializing resolution denying the 2021 Application. In the resolution, the Board rejected the testimony proffered by Cape Jetty's witnesses. The Board found the 2021 Application would have a "negative impact . . . on parking and traffic in the area." The Board further concluded Cape Jetty "ha[d] not presented an understandable . . . parking plan, and ha[d] not even identified the property to which the valet parking w[ould] be directed." Additionally, the Board

---

[1] Cape May City Code § 417-6(G) provided: "Final approval shall expire two years from the date of final approval unless the applicant has secured a building permit to commence construction."

determined the Property's proximity to "a large beach [that] ha[d] recently formed[] and . . . a substantial number of public events . . . ma[d]e this area uniquely impacted by the addition of a [two hundred and forty]-seat restaurant . . . with insufficient parking." In denying the 2021 Application, the Board relied on the testimony of the neighboring residents, the Board members' knowledge of the area, and the testimony of the Board's engineer. The Board's resolution concluded the 2021 Application lacked a sufficient and definitive parking plan and the proposed development would "have a negative impact on the zone plan and zoning ordinance, as well as the neighborhood."

Regarding the height variance, the Board's resolution stated aesthetic considerations related to the hotel's interior space did not "justify exceeding the height [maximum], particularly [because] . . . th[e] building will be much larger than many of the buildings nearby." Thus, the Board concluded the height variance would have a "negative impact on the surrounding neighbors," specifically the "light, air and open space for the surrounding properties." Moreover, the resolution noted the height variance "was to accommodate the restaurant and bar" rather than benefit the public. Further, the resolution denied the height variance as "moot" based on the Board's denial of the parking variance.

On the same date of the resolution denying the 2021 Application, the Board held a hearing on Cape Jetty's Extension Request. Cape Jetty's attorney explained the extension was required due to the COVID-19 state of emergency and Cape Jetty's preparation of the 2021 Application. However, Cape Jetty did not present any witness testimony or other evidence in support of the Extension Request. Cape Jetty relied exclusively on its counsel's recitation of the "procedural history" for the Extension Request.

On February 22, 2022, the Board adopted a memorializing resolution denying Cape Jetty's Extension Request. In the resolution, the Board found "the intention of [Cape May City Code § 417-6(G)] was to encourage developers to begin their projects promptly . . . , such that the development takes place in an environment, legislatively and otherwise, consistent with that which existed at the time of approval." Additionally, the Board determined that "aside from indicating [Cape Jetty] focused for a period of time on making a new proposal . . . , there was no testimony . . . provided to explain the delay . . . [,] despite repeated invitations to make such a presentation." Because "there was no testimony . . . provided to explain the delay" in obtaining a building permit under the 2019 Approval, the Board rejected the Extension Request.

On March 11, 2022, Cape Jetty filed a complaint in lieu of prerogative writs challenging the Board's denial of its 2021 Application and Extension Request. Cape Jetty also sought a declaratory judgment that the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, preempted Cape May City Code § 417-6(G).

After hearing legal arguments, in a November 30, 2022 order and written decision, the judge affirmed the Board's denial of the 2021 Application. The judge found "[t]he Board was within its discretion to deny a parking variance for an unidentified lot that [Cape Jetty] had yet to make substantial progress on." Regarding the height variance, the judge recognized "aesthetic appeal alone can be [a] reason to grant a [height] variance," but concluded the "possible interior aesthetic improvement [associated with the height variance did] not outweigh the impact on the residents in the shadow of the proposed development."

Regarding the Board's denial of the Extension Request, the judge reversed the Board's decision and remanded the issue to the Board. While the judge determined the Board "properly reconciled [the MLUL] with Cape May City Code § 417-6(G)" and "did not apply that portion of the [o]rdinance that would run contrary to the MLUL," he found the Board's resolution was unreasonable due to "the lack of record, unclear legal positioning of the parties, and

11

overlapping considerations."  The judge remanded the Extension Request to the Board to render "adequate fact finding and conclusions."  In his remand order, the judge provided:  "[Cape Jetty] may . . . present testimony in support of granting the [E]xtension [R]equest.  If [Cape Jetty] chooses to supplement, members of the public [may] comment on same.  [The Board] may, but is not required to, grant the Extension Request."

On appeal, Cape Jetty contends the judge erred in affirming the Board's denial of the 2021 Application.  Cape Jetty further argues the judge erred in remanding the matter for additional testimony and fact-finding regarding the Extension Request.  It also asserts the MLUL preempts Cape May City Code § 417-6(G) and the Board erred in finding the 2019 Approval expired.

In its cross-appeal, the Board contends the judge erred in remanding Cape Jetty's Extension Request for further consideration by the Board.

We review a trial court's decision regarding the validity of a municipal board's determination applying the same standard as the trial court.  Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015).  "We defer to a municipal board's factual findings as long as they have an adequate basis in the record."  Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013).  "[C]ourts ordinarily

should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999).

In reviewing decisions by local boards, we are mindful that the Legislature vested boards with discretion related to decisions reflecting the character and level of development within their community. Booth v. Bd. of Adjustment, 50 N.J. 302, 306 (1967). A board's discretionary decisions are accorded a rebuttable presumption of validity. Harvard Enters., Inc. v. Bd. of Adjustment, 56 N.J. 362, 368 (1970). Additionally, a board's decision "may be set aside only when it is 'arbitrary, capricious[,] or unreasonable.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)).

"[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). "The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid. However, a local board's legal determinations are reviewed

13

de novo. Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 559 (2018).

"[W]hen a party challenges a . . . board's decision through an action in lieu of prerogative writs, the . . . board's decision is entitled to deference." Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). The burden is on the challenging party to overcome this highly deferential standard of review. Price v. Himeji, LLC, 214 N.J 236, 284 (2013). Further, "the deference accorded to a board's denial of a variance is greater than that given to its decision to grant a variance." CBS Outdoor, Inc. v. Borough of Lebanon Plan. Bd./Bd. of Adjustment, 414 N.J. Super. 563, 578 (App. Div. 2010). "Thus, a party seeking to overturn the denial of a variance . . . must prove that the evidence before the local board was 'overwhelmingly in favor of the applicant.'" Id. at 579 (quoting Scully-Bozarth Post #1817 of VFW v. Plan. Bd. of City of Burlington, 362 N.J. Super. 296, 314-15 (App. Div.2003)).

We may not substitute our judgment over the judgment of the local board absent a clear abuse of discretion. Cell S., 172 N.J. at 81-82. "Even were we to harbor reservations as to the good judgment of the local land use agency's decision, 'there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.'" CBS Outdoor, Inc., 414

N.J. Super. at 577 (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296-97 (1965)).

We first consider Cape Jetty's argument that the judge erred in affirming the Board's denial of the 2021 Application. We disagree.

A planning board has the power to grant variances under N.J.S.A. 40:55D-70(c), commonly known as (c)(2) variances. A planning board may grant a (c)(2) variance provided the variance relief would advance the purposes of the MLUL, zoning ordinance, and local zoning plan and "the benefits of the deviation would substantially outweigh any detriment." N.J.S.A. 40:55D-70(c)(2). An applicant bears the burden of satisfying both prongs for a (c)(2) variance, known as the "positive" and "negative" criteria. Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 30 (2013).

To satisfy the positive criteria, the applicant must show "the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance the purposes of zoning." Ibid. The purposes of zoning include promoting "public health [and] safety" and a "desirable visual environment"; providing "adequate light, air[,] and open space"; securing "safety from fire, flood, [and] panic"; and providing "sufficient space in appropriate locations for a variety of . . . uses . . . in order to meet the

15

needs of all New Jersey citizens[.]" N.J.S.A. 40:55D-2. As to the negative criteria, the applicant must prove "that the variance [would] not result in substantial detriment to the public good or substantially impair the purpose of the zoning plan." Ten Stary Dom, 216 N.J. at 30.

In Kaufmann v. Planning Board for the Township of Warren, our Supreme Court explained:

> [N]o [(c)](2) variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a [(c)](2) case . . . will be not on the characteristics of the land that . . . warrant[] a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community.
>
> [110 N.J. 551, 563 (1988).]

Cape Jetty contends it satisfied the positive and negative criteria for the (c)(2) variances related to parking and height based on the testimony of its experts. Thus, Cape Jetty argues the Board's denial of the 2021 Application was arbitrary, capricious, and unreasonable and the judge erred in affirming the Board's denial of that application.

However, as the judge correctly concluded, the Board could accept or reject the expert testimony proffered by Cape Jetty's experts. See Bd. of Educ.

16

of Clifton v. Zoning Bd. of Adjustment, 409 N.J. Super. 389, 434 (App. Div. 2009) ("Zoning boards may choose which witnesses, including expert witnesses, to believe."). "While a board may reject expert testimony, it may not do so unreasonably, based only upon bare allegations or unsubstantiated beliefs." N.Y. SMSA, LP v. Bd. of Adjustment, 370 N.J. Super. 319, 338 (App. Div. 2004) (citing Cell S., 172 N.J.at 87; Kramer, 45 N.J. at 288). Where a board rejects "competent expert testimony," it must do so on the basis of "competing evidence, expert or otherwise . . . presented by any interested party or the [b]oard to counter [the applicant's expert] testimony." Id. at 338-39 (second alteration in original) (quoting Ocean Cnty. Cellular Tel. Co. v. Twp. of Lakewood Bd. of Adjustment, 352 N.J. Super. 514, 526 (App. Div. 2002)).

The judge addressed Cape Jetty's failure to satisfy the positive and negative criteria for the requested (c)(2) variances. Specifically, the judge found the Board had the discretion to deny the parking variance associated with an off-site lot that had not even been identified by Cape Jetty. As to the height variance, the judge determined the additional height presented an aesthetic benefit solely for Cape Jetty and occupants of the hotel rather than any improved zoning for the benefit of the community. Moreover, the judge found the height

17

variance would negatively "impact light, air[,] and open space for the surrounding properties."

Additionally, the judge noted the Board properly relied upon the knowledge of its members, the testimony of its engineer, and the competent lay testimony of local residents in concluding Cape Jetty failed to satisfy the positive and negative criteria for the (c)(2) variances. Based on the record, the judge found the Board did not reject the testimony of Cape Jetty's experts by relying on bare allegations or unsubstantiated beliefs.

Having reviewed the record, we discern no basis to disturb the judge's decision upholding the Board's denial of Cape Jetty's 2021 Application. The judge properly found the Board's action was supported by sufficient credible evidence in the record and the denial of the 2021 Application was not arbitrary, capricious, or unreasonable.

We next address Cape Jetty's argument the judge should have invalidated Cape May City Code § 417-6(G) because it was contrary to N.J.S.A. 40:55D-52. We disagree.

The MLUL "authorizes a municipality to enact a master plan . . . and to adopt zoning ordinances in furtherance of its plan." D.L. Real Estate Holdings, L.L.C. v. Point Pleasant Beach Plan. Bd., 176 N.J. 126, 130 (2003). "Although

A-1418-22

municipal authority to regulate land use is limited to the extent the Legislature delegates such authority through the MLUL, the [New Jersey] Constitution provides that [the] delegation of authority is to be 'liberally construed' in a municipality's favor." Id. at 132 (citation omitted) (quoting N.J. Const. art. IV, § 7, ¶ 11). Accordingly, a court must "give liberal construction to municipal powers expressly conferred by the Legislature, as well as to those 'of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by [the] Constitution or by law.'" Ibid. (alteration in original) (quoting N.J. Const. art. IV, § 7, ¶ 11).

Municipal authority to regulate land use includes the adoption of ordinances related to approvals. "Ordinances that impose a time limit on the validity of a variance . . . have been upheld notwithstanding that the MLUL does not grant expressly that authority." Id. at 133 (citing Ramsey Assocs., Inc. v. Bd. of Adjustment, 119 N.J. Super. 131, 133 (App. Div. 1972)). Because "the MLUL does not confer on preliminary approval a 'right' to perpetual life absent an adverse zoning change," ordinances imposing a time limit have been upheld. Id. at 134. See also Ramsey Assocs., Inc., 119 N.J. Super. at 133 ("It is not unreasonable or improper to require a new application for a building permit or

variance to be filed if construction pursuant to the permit or variance theretofore granted is not begun within the time limited by the ordinance.")

The MLUL provides, "[t]he zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to [N.J.S.A. 40:55D-49] . . . shall not be changed for a period of two years after the date on which the resolution of final approval is adopted[.]" N.J.S.A. 40:55D-52(a). "If the developer has followed the standards prescribed for final approval . . . , the planning board may extend such period of protection for extensions of one year but not to exceed three extensions." Ibid. "The developer may apply for [an] extension [of final approval] either before or after what would otherwise be the expiration date." N.J.S.A. 40:55D-52(c). If "final approval has expired before the date on which the extension is granted, the extension shall begin on what would otherwise be the expiration date." Ibid.

N.J.S.A. 40:55D-49, in relevant part, provides:

> Preliminary approval . . . of a site plan . . . shall . . . confer upon the applicant the following rights . . . :
>
> a. That the general terms and conditions on which preliminary approval was granted shall not be changed, including but not limited to use requirements; layout and design standards for streets, curbs, and sidewalks; lot size; yard dimensions and off-tract improvements;

and, in the case of a site plan, any requirements peculiar to site plan approval pursuant to [N.J.S.A. 40:55D-41]; except that nothing herein shall be construed to prevent the municipality from modifying by ordinance such general terms and conditions of preliminary approval as relate to public health and safety.

In accordance with this MLUL provision, a board shall not alter the terms and conditions of a preliminary approval for a three-year period following the date of that approval, except by an ordinance relating to public health and safety. N.J.S.A. 40:55D-52(a) guarantees this right for an additional two-year period following the date of final approval (protective period). The statute also allows a developer to apply for a one-year extension of the protective period. Under N.J.S.A. 40:55D-52(c), a developer may apply for an extension after expiration of the protective period.

"State legislation preempts a municipal zoning ordinance when the ordinance 'expressly forbids something which is expressly authorized by statute or permits something which a statute expressly proscribes.'" Bubis v. Kassin, 184 N.J. 612, 629 (2005) (quoting Tumino v. Long Beach Twp., 319 N.J. Super. 514, 520 (App. Div. 1999)). Here, Cape May City Code § 417-6(G) provides:

Final approval shall expire two years from the date of final approval unless the applicant has secured a building permit to commence construction. The Planning Board may extend final approval . . . for one year. The developer may thereafter apply for an

21

extension of final approval for such additional period of time as shall be determined by the Planning Board to be reasonable.

This ordinance does not rescind Cape Jetty's right to proceed under the 2019 Approval during the protective period. Nor does the ordinance abrogate Cape Jetty's safeguard against a zoning change during the protective period. Additionally, the ordinance does not abolish or limit Cape Jetty's right to apply to the Board for an extension of the protective period.

Here, Cape Jetty applied for an Extension Request. The Board considered, but rejected, the Extension Request for the reasons stated in the Board's February 22, 2022 resolution.

Cape Jetty also argues Aronowitz v. Planning Board of Township of Lakewood, 257 N.J. Super. 347 (Law Div. 1992), required the judge to invalidate Cape May City Code § 417-6(G) as preempted by N.J.S.A. 40:55D-52. We disagree.

In Aronowitz, the municipality's ordinance provided for the expiration of final approval if an applicant failed to obtain a building permit and commence construction within two years of a final approval. 257 N.J. Super. at 360. The planning board granted a one-year extension of the applicant's final approval. Id. at 349-50. The plaintiffs objected to the extension and filed suit, arguing the

extension was invalid because it was filed more than two years after final approval.  Id. at 349-50.

The judge in Aronowitz rejected the plaintiffs' argument, holding:

> [T]o the extent that the municipal ordinance could be read as requiring approval of the extension request prior to the expiration of the two[-]year period, it would be ultra vires . . . under . . . N.J.S.A. 40:55D-52.  However, if . . . the [ordinance's] intent is to recognize a right to extension under the [MLUL] which includes a right to extension after the two year period, it is consistent with state law . . . .
>
> [257 N.J. Super. at 365 (emphasis added).]

Here, the Board interpreted Cape May City Code § 417-6(G) as permitting Cape Jetty "to request [an] extension more than two years, but less than three years, after the final approval."  Under its interpretation of the ordinance, the Board preserved Cape Jetty's right to request an extension of the statutory protective period more than two years after the date of final approval.

We are satisfied the judge properly reconciled Cape May City Code § 417-6(G) and N.J.S.A. 40:55D-52 because the Board considered Cape Jetty's Extension Request.  Nothing in the MLUL compelled the Board to grant the Extension Request absent Cape Jetty demonstrating good cause to extend the 2019 Approval.  Accordingly, the judge properly declined to invalidate Cape

May City Code § 417-6(G) because the ordinance was not contrary to the MLUL.

We next consider the parties' arguments the judge erred in remanding the denial of Cape Jetty's Extension Request to the Board. We agree.

In a land use dispute, "the role of the court is to evaluate whether the . . . [b]oard's decision 'is founded on adequate evidence[,]' and . . . 'the record made before the [b]oard is the record upon which the correctness of the [b]oard's action must be determined.'" Price, 214 N.J. at 295 (citations omitted). The judge is required to "review the record before the [b]oard in order to determine whether the [b]oard's decision was adequately supported by the evidence." CBS Outdoor, Inc., 414 N.J. Super. at 578 (citing Lang, 160 N.J. at 58).

At the Extension Request hearing, Cape Jetty asserted it was not required to present witness testimony articulating good reasons in support of the extension. Cape Jetty stated the reasons supporting its Extension Request were based on facts of record or reasonably known or ascertainable to the Board.

The judge found Cape Jetty, through its counsel, relied "upon the procedural history of the matter . . . such as the existence of the COVID-19 pandemic" and Cape Jetty's decision "to seek amended site plan approval before seeking an extension" in support of the Extension Request. The judge concluded

the record before the Board on Cape Jetty's Extension Request "was filled primarily with arguments against [Cape Jetty]'s efforts since 2010, rather than specifically the 2019 Extension Request." The judge found "there were overlapping considerations from both the 2021 [h]earing and the previous approval that tainted the [e]xtension [h]earing." Additionally, the judge determined the Board's invitation to have Cape Jetty's attorney sworn at the hearing on the Extension Request "placed [Cape Jetty] in a difficult situation, and had an adverse impact on the overall presentation." Based on these findings, the judge remanded the Extension Request to the Board and allowed Cape Jetty "the right to present testimony to support a grant of the extension, and if [Cape Jetty] so cho[se], members of the public could comment on same." The judge concluded, "justice [would] best be served by remanding the case to the Board for reconsideration and specific findings, and by permitting the Board to require additional information pertaining to 'good cause.'"

On appeal, Cape Jetty and the Board argue the judge had sufficient evidence, based on the record before the Board at the January 25, 2022 hearing, to decide whether the Board's denial of the Extension Request was arbitrary, capricious, or unreasonable. The Board contends Cape Jetty bore the burden of justifying the Extension Request and asserts it made specific fact findings in its

25

February 22, 2022 resolution. Cape Jetty claims it relied on the procedural history of the 2019 Approval and submission of its 2021 Application in support of the Extension Request and no witness testimony was required.

The parties agree the judge had the complete record related to Cape Jetty's Extension Request, including the Board's February 22, 2022 resolution explaining the reasons for denying the request. However, the judge declined to decide the issue based on the existing record and elected to remand the issue to the Board.

Because both parties are relying on the existing record related to Cape Jetty's Extension Request, we vacate the portion of the November 30, 2022 order remanding the Extension Request to the Board. In remanding, the trial court should decide whether the denial of the Extension Request was arbitrary, capricious, or unreasonable as Cape Jetty argues. Or, as the Board argues, whether Cape Jetty failed to meet its burden under N.J.S.A. 40:55D-52(d) by proving "to the reasonable satisfaction of the board that [it] was barred or prevented, directly or indirectly, from proceeding with the development because of delays in obtaining legally required approvals from other governmental entities and that the developer applied promptly for and diligently pursued these

of these approvals."  We express no opinion on the outcome of this issue on remand.

To the extent we have not addressed any of Cape Jetty's remaining arguments, the arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1418-22